# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-KA-00704-SCT

*LEON D. TAGGART*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 04/12/2006 |
| TRIAL JUDGE: | HON. ROBERT P. CHAMBERLIN |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAVID CLAY VANDERBURG |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: DESHUN TERRELL MARTIN |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/07/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.    Leon D. Taggart went to trial in DeSoto County Circuit Court on a multi-count indictment charging him with house burglary, rape, kidnapping and armed robbery. The jury found Taggart not guilty of house burglary; however, the jury found Taggart guilty of rape, kidnapping and armed robbery. At the conclusion of the separate sentencing phase of the trial, the same jury returned sentences of life imprisonment as to each of the three capital offenses, whereupon the trial judge sentenced Taggart to serve these life sentences

consecutively. After a denial of post-trial motions, Taggart appealed to us. Finding no reversible error, we affirm.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2. We give here only a brief recitation of the facts for a full understanding of this case; however, during the subsequent discussion of the issues before us, more facts will be revealed. Suffice it to state here that on September 6, 2005, a man known to the victim as "Dale Baxter" appeared in the victim's bedroom shortly after 6:00 a.m. The victim, who lived in Southaven near the intersection of Nail Road and U. S. Highway 51, would later learn that "Dale Baxter" was an alias sometimes used by Leon D. Taggart; therefore, we will refer to the defendant by his true name. According to the victim's testimony at trial, Taggart bound the victim with duct tape and forcibly raped her at knife-point, with the victim's niece sleeping in a nearby bedroom. Taggart used the knife to cut off the victim's pajamas and in the process of the initial struggle, the victim was cut. Although she initially resisted Taggart's acts, the victim ceased her resistance after Taggart's threats of violence upon her and her niece. At the time of these crimes, the victim's husband was in Louisiana performing subcontracting work in the wake of Hurricane Katrina, which had occurred only eight days earlier. At all relevant times during the victim's ordeal, Taggart had the knife in his hand. After Taggart raped the victim, he told her that they were going to Winona, "where the woods get thick," so the two of them left in the victim's car against her will, with her driving. At Taggart's instructions, the victim drove to an ATM at a Bancorp South branch on Church Road and withdrew $55, leaving a $.32 balance in her account. The ATM receipt indicated

2

that the money was withdrawn at 6:58 a.m. on September 6, 2005. The victim gave Taggart the $55 cash because he had a knife "stuck in my side."

¶3. From Church Road, Taggart and the victim then proceeded south on Interstate 55. As they approached the Hernando exit, Taggart inquired of the victim if she was familiar with Hernando, and she lied by responding "no." Following Taggart's directions, the victim exited at Hernando and drove to McDonald's, which was located on Commerce Street near Interstate 55. The victim had her seatbelt off and proceeded to drive toward the drive-through window at McDonald's, but then she "gunned it, opened the door and tucked and rolled and came up screaming,"causing the car to crash into a nearby dumpster. Taggart then quickly exited the vehicle and headed east toward Interstate 55. Approximately forty minutes later, two Hernando policemen apprehended Taggart while he was walking down Commerce Street about a quarter of a mile from McDonald's near the northbound ramp to Interstate 55.

¶4. In due course, the DeSoto County grand jury handed down a four-count indictment charging Taggart with burglary of a dwelling (Count 1), forcible rape (Count 2), kidnapping (Count 3), and armed robbery (Count 4). At trial, the State called six witnesses in its case-in-chief: The victim; Sergeant Donna Barton, a Southaven police officer; Detective Edward James, the senior crime scene investigator, who had received training regarding the Automated Fingerprint Identification System (AFIS), including latent prints; Detective Jeff Scruggs, also a Southaven police officer; Detective Russell Perry, a Hernando policeman; and, Dr. Roy W. "Bo" Scales, an expert in DNA and forensic analysis from Brandon. After

3

the State rested, Taggart, through counsel, moved for a directed verdict of acquittal on all four counts, and the trial court denied the motion.[1]

¶5.    In the defendant's case-in-chief, two witnesses were called:  Jerry Reed, the victim's neighbor who lived across the street; and Taggart.  Contrary to the victim's testimony that she was forcibly raped at knife-point while bound with duct tape, Taggart testified that he and the victim engaged in consensual sex initiated by the victim, and that the victim "wanted to make it special, and she was into, like, bondage, you know."  Taggart also claimed that he never completed the sex act that day because the victim accidentally cut herself with the knife while doing "this bondage thing."  Additionally, Taggart stated that he and the victim had previously had consensual sex on several occasions because the victim was having marital problems with her husband.  Taggart also testified that the victim's motive for fabricating the rape, kidnapping and armed robbery, all of which he denied, was that the victim "was upset because she wanted her husband [] to come back, and he was waffling on her because he didn't really want to come back to her."

¶6.    After the State's brief rebuttal, the trial judge's reading of the instructions to the jury, and closing arguments from counsel, the jury retired to deliberate and in due course returned verdicts of guilty as to rape, kidnapping and armed robbery; however, the jury found Taggart

---

[1]The trial court also granted the State's *ore tenus* motion to amend Count 1 of the indictment, which charged Taggart with the crime of burglary of a dwelling . . . "with the intent to commit some crime therein."  The amendment set out that Taggart was charged with the crime of burglary of a dwelling . . . "with the intent to commit the crime of rape."  As already noted, Taggart was in due course acquitted as to Count 1 of the indictment.

not guilty of the crime of burglary of a dwelling.[2]  The trial judge then proceeded to the sentencing phase of the trial before the same jury.  After the presentation of additional evidence, the trial judge's reading of additional instructions to the jury, and closing arguments from counsel, the jury once again retired to deliberate, whereupon the jury returned sentences of life imprisonment on Counts 2, 3, and 4 (rape, kidnapping and armed robbery).  Consistent with the action of the jury, the trial judge imposed three life sentences upon Taggart, ordering these sentences to run consecutively.  Taggart thereafter filed a motion for a new trial and a separate motion for a judgment notwithstanding the verdict. After the trial judge's denial of these post-trial motions, Taggart perfected this appeal.

**DISCUSSION**

¶7.    Taggart, through counsel, assigns two errors for us to consider: (1) Whether the trial court erred in denying his motion for a directed verdict at the close of the State's case-in-chief, as well as his proposed jury instruction D-1, which was a peremptory instruction directing the jury to find Taggart not guilty on all four counts of the indictment; and (2) whether the trial court erred in allowing Taggart's prior Texas conviction into evidence during the sentencing phase of the trial.  We restate these issues for clarity in discussion.

---

[2]The jury verdict of not guilty as to Count 1, house burglary, is not inconsistent with the verdicts of guilty on the other counts, since there was sufficient testimony before the jury that Taggart, who lived in a camper behind the victim's house, had access to the victim's home with the victim's consent.

**I.     WHETHER THE TRIAL COURT ERRED IN DENYING TAGGART'S POST TRIAL MOTIONS**

*A. Motion for J.N.O.V.*

¶8.     We are mindful of the fact that in his motion for judgment notwithstanding the verdict (J.N.O.V.), Taggart not only attacked the legal sufficiency of the overall evidence adduced at trial, he also asserted trial court error in denying his motion for a directed verdict made at the close of the State's case-in-chief, and in denying his proposed jury instruction D-1, which stated "[t]he Court instructs the jury to find the Defendant not guilty on all counts."  Our cases are legion on this issue.  The appropriate inquiry on appeal in considering the trial court's denial of a J.N.O.V. motion is "whether the evidence shows `beyond a reasonable doubt that [the defendant] committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.'" ***Bush v. State***, 895 So. 2d 836, 843 (Miss. 2005) (quoting ***Carr v. State***, 208 So. 2d 886, 889 (Miss. 1968)). Stated differently,

> [w]e must, with respect to each element of the offense, consider all of the evidence - not just the evidence which supports the case for the prosecution - in the light most favorable to the verdict. The credible evidence which is consistent with the guilt [of the accused] must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.  ***Wetz v. State***, 503 So. 2d 803, 808 (Miss. 1987) (citations omitted).

***Gleeton v. State,*** 716 So. 2d 1083, 1087 (Miss. 1998) (quoting ***Franklin v. State***, 676 So. 2d 287, 288 (Miss. 1996)). Our standard of review for the trial court's denial of directed verdicts and peremptory instructions is the same as that for the trial court's denial of a J.N.O.V. "'[A]ll evidence introduced by the State is to be accepted as true, together with any reasonable inferences that can be drawn from that evidence.'" ***Wall v. State***, 718 So. 2d 1107, 1111 (Miss. 1998) (quoting ***Brown v. State***, 556 So. 2d 338, 340 (Miss. 1990)).

¶9. According to the appropriately given jury instructions, (1) in order to find Taggart guilty of rape, the jury had to find that on or about September 6, 2005, Taggart had forcible sexual intercourse ("penis of the male is inserted into the vagina of the female") with the victim; (2) in order to find Taggart guilty of kidnapping, the jury had to find that on or about September 6, 2005, Taggart forcibly seized and confined the victim "with intent to cause her to be secretly confined, or with intent to cause her to be imprisoned against her will;" and (3) in order to find Taggart guilty of armed robbery (robbery using a deadly weapon), the jury had to find that on or about September 6, 2005, Taggart feloniously took $55 cash from the presence or person of the victim, being the personal property of the victim, against her will by putting the victim in fear of immediate injury by the exhibition of a deadly weapon (the knife), and that the victim parted possession with her cash money only because of being in fear of immediate injury to her person being inflicted by Taggart. In each "element" instruction, the jury also was informed that if the State failed to prove any one or more of the elements of the offense charged, beyond a reasonable doubt, the jury must find Taggart not guilty of that particular criminal offense.

7

¶10.    With our appropriate standard of review in mind as we consider the trial judge's denial of Taggart's motion for a directed verdict, peremptory instruction and J.N.O.V., we turn to the record before us in today's case.  In reviewing the evidence, as well as the reasonable inferences which might be drawn from the evidence, in the light most favorable to the prosecution, we note here certain facts:  Taggart bound the victim and forcibly raped her, using the exhibition of the knife and threat of bodily harm to her and her niece if she resisted; DNA testing from the rape kit showed the presence of semen, but no sperm, in the victim's vagina, but Dr. Scales testified that the absence of sperm in the semen was "consistent with the male donor not reaching ejaculation" (the victim testified that she did not think Taggart had ejaculated inside of her  "[b]ecause it was only semi-firm and just because he didn't look like he had had an orgasm."); by constantly exhibiting the knife Taggart forced the victim to get in her car with him to drive to Winona, "where the woods get thick;" the two of them left in the victim's car against her will, with her driving; and the victim made an ATM withdrawal of $55 and gave Taggart the cash because he had a knife "stuck in my side."  Thus, based on the status of the record in this case, and considering the applicable law, we find that the trial judge committed no error in denying Taggart's motion for J.N.O.V., again acknowledging that contained within Taggart's J.N.O.V. motion were assertions that the trial court erred in denying his motion for a directed verdict and his submitted peremptory "not guilty" instruction.

**B. Motion for a New Trial.**

¶11.    As we recently stated in ***Jones v. State***, 918 So. 2d 1220, 1235 (Miss. 2005):

"That as a matter of law the motion for judgment notwithstanding the verdict must be overruled and denied in no way affects and little informs the trial judge regarding his disposition of the motion for a new trial." *Jesco*, *[Inc. v. Whitehead]*, 451 So. 2d [706] at 714 [(Miss. 1984)](Robertson, J., specially concurring). As with a j.n.o.v. motion, our law is well-settled concerning our review of the trial court's denial of a motion for a new trial:

> A motion for a new trial, however, falls within a lower standard of review than does that for a judgment notwithstanding the verdict. *Id.* at 127. A motion for a new trial simply challenges the weight of the evidence. *Id.* This Court has explained that it will reverse the trial court's denial of a motion for a new trial only if, by doing so, the court abused its discretion. *Id.* (quoting *Gleeton v. State*, 716 So. 2d at 1088). "We will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." *Id.* (quoting *Groseclose v. State*, 440 So. 2d 297, 300 (Miss. 1983)). This Court has also explained that factual disputes are properly resolved by a jury and do not mandate a new trial. *McNeal v. State*, 617 So. 2d 999, 1009 (Miss. 1993). *Holloway v. State*, 809 So. 2d 598, 605-06 (¶¶21-22) (Miss. 2000).

*Ginn v. State*, 860 So. 2d 675, 685 (Miss. 2003). *See also* *Bush v. State*, 895 So. 2d 836, 844 (Miss. 2005), and URCCC 10.05.

*Id.* at 1235.

¶12. As horrendous as the acts inflicted upon the victim by Taggart are, this case is no different than the numerous jury trials conducted daily in this state and in each state of this nation – this case, like all others, contains conflicting testimony. This is unquestionably a case of "she said – he said." "She" said" she was forcibly raped, kidnapped and robbed by "him" at knife-point. "He said" he was engaging in consensual rough sex with "her" and that none of these acts of rape, kidnapping and armed robbery occurred, but instead they were fabrications by "her" because of "her" unhappy married life. The cold hard facts are that this

9

was a "classic jury case." The jury had before it this conflicting testimony of the witnesses, as well as the exhibits and the jury instructions, and it was the responsibility of the jury to make findings of fact and then apply the law as given by the trial judge to the facts to reach a proper verdict as to each of the four counts of the indictment. With this in mind, we are convinced that the guilty verdicts of the jury concerning the counts charging Taggart with rape, kidnapping and armed robbery are beyond the authority of this Court to disturb. Stated differently, we are in no way convinced that the jury verdicts were so contrary to the overwhelming weight of the evidence that to allow these verdicts to stand would be to sanction an unconscionable injustice. Therefore, the trial court did not commit error in denying Taggart's motion for a new trial.

¶13. In sum, we find that the trial court did not err in denying Taggart's motion for J.N.O.V. and his separate motion for a new trial. Therefore, this first issue is without merit.

## II. WHETHER THE TRIAL COURT ERRED BY ALLOWING INTO EVIDENCE DURING THE SENTENCING PHASE THE DEFENDANT'S PRIOR TEXAS CONVICTION.

¶14. After jury deliberations in the first phase of the trial, the jury found Taggart not guilty of house burglary, but guilty of forcible rape, kidnapping, and armed robbery. After the conclusion of the guilt/innocence phase, the trial judge then proceeded to the sentencing phase before the same jury. As is customary, the prosecutor requested the trial judge to permit the State to incorporate all evidence adduced in the first phase of the trial into the record during the sentencing phase, so as to permit the jury to consider this prior evidence in arriving at the appropriate punishment. Without objection from defense counsel, the trial

10

judge granted the State's request, meaning that at the sentencing phase, the jury had before it, *inter alia*, the detailed testimony of the victim as to the actions of the defendant.

¶15.    However, over Taggart's objection, the trial judge also allowed the State to introduce into evidence Taggart's 1986 Texas conviction and sentence, revealing that on May 19, 1986, he was convicted and sentenced for second degree robbery in the 252nd District Court of Jefferson County, Texas.  At the time this documentary evidence was offered by the State, the record reveals that the following occurred:

> BY THE COURT: Any objection, [defense counsel]?
>
> BY [DEFENSE COUNSEL]: Yes, sir, May we approach?
>
> BY THE COURT: Yes, sir.
>
> (COUNSEL APPROACHED THE BENCH FOR A CONFERENCE; SAME NOT REPORTED.)
>
> BY THE COURT: First, for the jury, you'll notice that we were shuffling some papers and up here talking at the bench.  The parties, [prosecutor] and [defense counsel], have agreed that the only thing to be submitted is the actual judgment – the actual conviction of Mr. Taggart in the prior case.
>
> In regard to that, [defense counsel], other than that, any further objection?
>
> BY [DEFENSE COUNSEL]: Your Honor, just for the record, we would object to the documents as being hearsay.
>
> BY THE COURT: Okay. [Prosecutor], any response?
>
> BY [PROSECUTOR]: Your Honor, they are certified under the seal of the Clerk of the Court of Jefferson County, Texas, and under our rules, they meet all the applicable burdens.
>
> BY THE COURT: In conformity with the agreement made at the bench regarding the withdrawal of the other documents, the Court will overrule the

objection as to this prior conviction, and it will be admitted for the sentencing phase of this hearing.

¶16. Other than the incorporation of the evidence from the guilt/innocence phase into the record for the sentencing phase, and documentary evidence of the Texas robbery conviction, the only additional evidence offered by the State during the sentencing phase was brief testimony from the victim as to how these crimes had affected her life and a plea from the victim to the jury to "[j]ust please send him away as long as you possibly can." The victim was not cross-examined by defense counsel, nor did Taggart offer any additional evidence. After the trial judge read the sentencing instructions to the jury, and the jury heard the closing arguments of the attorneys, the jury retired to deliberate, returning life sentences as to forcible rape, kidnapping and armed robbery. The trial judge thereafter entered a sentencing order, consistent with the jury verdict, sentencing Taggart to three life sentences, and the trial judge also ordered these sentences to be served consecutively.

¶17. As with all evidentiary issues, our standard for reviewing a trial judge's admission or exclusion of evidence is one of abuse of discretion. *Shaw v. State*, 915 So. 2d 442, 445 (Miss. 2005). "A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses this discretion so as to be prejudicial to the accused, the Court will not reverse this ruling." *Id.* at 445 (quoting *Jefferson v. State*, 818 So. 2d 1099, 1104 (Miss. 2002)).

¶18. Documentary proof of Taggart's prior Texas conviction consists of Exhibit 39, a three-page document certified according to the Acts of Congress. Page one of this document

reveals that Lolita Ramos, the Clerk of the District Courts for Jefferson County, Texas, certified that the attached documents were "a true and correct copy" on file in cause number 46648 styled "The State of Texas vs. Leon Dwayne Taggart." Ramos signed this certificate under the seal of the District Court. Judge Layne Walker of the 252nd District Court of Jefferson County, Texas, certified that Ramos was the Clerk of the Court at the time of her attestation. Ramos also certified that Judge Walker, at the time of making his certification, was the judge of the 252nd District Court of Jefferson County, Texas. The attached documentation revealed that on May 19, 1986, Taggart offered a guilty plea to the charge of second degree robbery and, upon acceptance of the guilty plea, the court sentenced Taggart to serve a term of fifteen years imprisonment in the custody of the Texas Department of Corrections.

¶19. To support his argument that this certified documentation concerning his Texas conviction was hearsay, Taggart cites but one case – *Ficklin v. State*, 758 So. 2d 457 (Miss. Ct. App. 2000). Taggart simply states that in *Ficklin*, the trial court "allowed a certified copy of a computer-generated record from the Mississippi Department of Corrections into evidence. The Court [of Appeals] held that certified computer printouts of Defendant's inmate files from the Mississippi Department of Corrections offer[ed] to show that he was an habitual offender, were hearsay evidence."

¶20. In *Ficklin*, the defendant was found guilty of aggravated assault, and the trial judge sentenced the defendant to life imprisonment without parole as a habitual offender pursuant to Miss. Code Ann. § 99-19-83 (Rev. 2000). During the sentencing hearing before the trial

13

judge, the defendant objected to the State's offering into evidence the computer-generated, certified records from the Mississippi Department of Corrections in an effort to prove the defendant was a habitual offender. Over the defendant's objections that the records were hearsay and that the records were incapable of being certified as self-authenticating documents, the trial judge allowed these documents into evidence concerning his habitual-offender status. In a thorough discussion on this issue, the Court of Appeals found that, while the documents were hearsay, they were admissible pursuant to Miss. R. Evid. 803(8). *Ficklin*, 758 So. 2d at 461-62. In reaching this conclusion on an "issue of first impression in this State," the Court of Appeals cited *United States v. Ryan*, 969 F. 2d 238, 240 (7th Cir. 1992); *Hughes v. United States*, 953 F. 2d 531, 540 (9th Cir. 1992); and *United States v. Young Brothers, Inc.* 728 F. 2d 682, 693-94 (5th Cir. 1984), as well as the federal counterpart to Mississippi's Rule 803(8). *Id.* at 462. In citing and discussing Miss. R. Evid. 902(4), the Court of Appeals concluded that these certified, computer-generated documents were properly allowed by the trial judge. *Id.*

¶21. Miss. R. Evid. 803 sets out various hearsay exceptions, where the availability of the declarant is immaterial:

> **Public Records and Reports.** Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the state in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

14

Miss. R. Evid. 803(8). Miss. R. Evid. 902 provides that:

> "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to . . . (4) . . . [a] copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) of this rule[3] or complying with any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority."[4]

¶22. In ***Doolie v. State,*** 856 So. 2d 669, 672-73 (Miss. Ct. App. 2003), the Court of Appeals found that the trial court did not err in a felony DUI trial in admitting the Mississippi Department of Public Safety's printout of the defendant's driving record pursuant to Miss. R. Evid. 803(8).

¶23. This Court considered the applicability of Miss. R. Evid. 902(4) in ***Cox v. State***, 586 So. 2d 761 (Miss. 1991). In ***Cox***, the defendant was convicted of arson and sentenced to life without parole as a habitual offender. In a separate sentencing hearing before the trial judge, the State offered documentation concerning a prior Mississippi conviction and a prior Florida conviction to prove the defendant's habitual offender status. The defendant did not contest the admissibility of the documentation concerning the Mississippi armed robbery conviction; but, the defendant did contest the admissibility of the documentation concerning the Florida

---

[3]Paragraphs (1), (2), and (3) of Rule 902 relate to (1) domestic public documents under seal; (2) domestic public documents not under seal; and (3) foreign public documents.

[4]While Taggart has made no Rule 902(4) argument here, we briefly discuss the rule since we are in the end adopting the Court of Appeals' reasoning in ***Ficklin***, which involved both Rule 803(8) and Rule 902(4) issues.

burglary conviction. The documentation which the State offered to prove this second conviction consisted of (1) a notarized statement by the Bureau of Investigation of the Memphis, Tennessee Police Department detailing the defendant's arrest and conviction record from the Federal Bureau of Investigation; (2) a notarized statement from a correctional records supervisor of the Florida Department of Corrections asserting that the defendant had been sentenced for burglary and detained by the FDOC for less than a year when he escaped; and (3) a signed cover letter from the Superintendent of the Florida Department of Corrections with enclosed uncertified documents, including copies of the defendant's commitment papers, judgment of conviction, fingerprints and photographs, with some of the documents containing the seal of the clerk of the court, but with none of the documents being certified according to the Acts of Congress. *Id.* at 765. This Court concluded that this documentation was not sufficient to prove this second conviction from Florida; therefore, while the arson conviction was affirmed, on the other hand, the habitual offender sentence was vacated and the case was remanded for resentencing under the appropriate arson statute. *Id.* at 768.

¶24. In Taggart's case, the documentation of his 1986 Texas conviction and sentence for second degree robbery was properly certified and authenticated according to the Acts of Congress; therefore, our case today is distinguishable from *Cox*. Returning to the Court of Appeals' decision in *Ficklin*, we agree with the Court of Appeals' reasoning on the Rule 803(8) issue, and adopt its reasoning in today's case. *Ficklin*, 758 So. 2d at 461-62. Thus, as to Taggart's hearsay objection to the certified documents concerning the Texas conviction,

16

the trial judge properly overruled Taggart's objection. While the documentation was no doubt hearsay, this evidence was properly admitted by the trial judge pursuant to the hearsay exception under Miss. R. Evid. 803(8).

¶25.   Practically all of our cases concerning the use of prior convictions at sentencing hearings address this critical issue in the context of sentencing hearings before the trial judge, sitting without a jury. However, in today's case, the sentencing phase of Taggart's trial was conducted before the same jury that already had found Taggart guilty of the capital offenses of rape, kidnapping, and armed robbery. We thus take this opportunity to address this issue in the context of sentencing hearings conducted before the jury in those instances where the statute provides for the sentence to be considered by the jury.

¶26.   Other than the death penalty statutory sentencing scheme in capital murder cases, there are three instances in which a jury in Mississippi may impose the sentence upon finding a defendant guilty of a felony criminal offense. Those instances are where the jury has found the defendant guilty of kidnapping (Miss. Code Ann. § 97-3-53 (Rev. 2006 )), rape (Miss. Code Ann. § 97-3-65(4)(a) (Rev. 2006)), and/or armed robbery (Miss. Code Ann. § 97-3-79 (Rev. 2006)). Taggart was indicted for all three of these capital offenses. Pursuant to each of these three statutes, the jury may impose a life sentence upon the defendant; however, if the jury is unable to agree on a life sentence, it then falls to the responsibility of the trial judge, sitting without a jury, to impose the sentence within the statutory parameters.[5]

_____

[5]For kidnapping, the sentencing judge has the authority to impose a penitentiary sentence of not less than one year, nor more than thirty years; for rape under section 97-3-

17

According to the record in today's case, the trial judge appropriately bifurcated this trial so that the jury initially would receive evidence only on the issue of guilt/innocence. Thus, during the first phase of the trial, the jury was not informed of Taggart's prior Texas conviction.

¶27. While Taggart's Texas robbery conviction was inadmissible during the guilt/innocence phase of the trial; on the other hand, the introduction of the prior Texas robbery conviction during the sentencing phase was not error and indeed was quite appropriate.

¶28. URCCC 10.04 sets out the procedure for bifurcated trials in criminal cases, and we quote this rule here, verbatim:

### Rule 10.04  BIFURCATED TRIALS

**A**. In any case where the state seeks to impose the death penalty, the trial shall be conducted in accordance with §§ 99-19-101 and 99-19-103, of the Mississippi Code of 1972 as amended and applicable court decisions.

**B.** In all cases not involving the death penalty, wherein the jury may impose life sentence, the court may conduct a bifurcated trial. If the defendant is found guilty of an offense for which life imprisonment may be imposed, a sentencing trial shall be held before the same jury, if possible, or before the court if jury waiver is allowed by the court.

At the sentencing hearing:

---

65(4)(a), the sentencing judge has the authority to impose a penitentiary sentence "for any term as the court, in its discretion, may determine;" and, for armed robbery, the sentencing judge has the authority to impose a penitentiary sentence for any term not less than three years.

18

1. The state may introduce evidence of aggravation of the offense of which the defendant has been adjudged guilty.
2. The defendant may introduce any evidence of extenuation or mitigation.
3. The state may introduce evidence in rebuttal of the evidence of the defendant.
4. A record shall be made of the above proceeding and shall be maintained in the office of the clerk of the trial court as a part of the record in that court.

**C.** Upon conviction, or after a plea of guilty, in cases where the court has sentencing authority, there may be a hearing before the trial judge as follows:

1. A presentence investigation may be conducted and a report thereof shall be made as required for cases where the court has discretion in imposition of sentence. Contents of this report shall be disclosed only to the parties. A copy of said report shall be delivered to both the prosecutor and the defendant or the defense attorney within a reasonable time prior to sentencing so as to afford a reasonable opportunity for verification of the material. Prior to the sentencing proceeding each party is required to notify the opposing party and the court of any part of the report which the party intends to controvert by the production of evidence.
2. The state may introduce evidence of aggravation of the offense of which the defendant has been adjudged guilty.
3. The defendant may introduce evidence to contradict or supplement any information contained in the presentence investigation report.
4. The defendant may introduce any evidence of extenuation or mitigation.
5. The state may introduce evidence in rebuttal of the evidence of the defendant.
6. A record shall be made of the above proceedings and shall be maintained in the office of the clerk of the trial court as a part of the record in that court.

¶29.    We note that pursuant to URCCC 10.04(B)(1), the State may introduce for the benefit of the sentencing jury "evidence of aggravation of the offense of which the defendant has been adjudged guilty." We also find guidance in *Summerall v. State*, 734 So. 2d 242 (Miss. App. 1999). In *Summerall*, the defendant appealed his conviction and sentence for the sale of cocaine. On appeal, the Court of Appeals affirmed Summerall's conviction and sentence. One of the issues Summerall raised on appeal was that the trial judge had received improper

19

evidence at the sentencing hearing.  A unanimous Court of Appeals (two judges of ten not

participating), stated:

> ¶20. In his last assignment of error, Sumrall argues that the trial court erred in
> admission of evidence during the sentencing hearing. Specifically, he objects
> to the testimony of Agent Kirkman which informed the court of complaints
> from the community that Sumrall had been selling drugs, the pre-buy operation
> to investigate the complaints, known as intel buys, and four more felony sale
> cases against him. Sumrall failed to give any legal citation to support his claim
> that the trial court received improper evidence during the sentencing hearing.
> Failure to cite to legal authority bars any consideration of the assigned error.
> *McClain v. State*, 625 So. 2d 774, 781 (Miss. 1993) (citing *Brown v. State*,
> 534 So. 2d 1019, 1023 (Miss. 1988); *Shive v. State*, 507 So. 2d 898, 900
> (Miss. 1987); *Pate v. State*, 419 So. 2d 1324, 1326 (Miss. 1982)).
>
> ¶21. Notwithstanding this procedural bar, *this issue has no merit. Rule 10.04
> (C)(2)* and (3) of the Uniform Circuit and County Court Rules *states in
> pertinent part*:
>
> (b) The State may introduce evidence of aggravation of the offense to which
> the defendant has been convicted or pleaded guilty.
>
> (c) The defendant may introduce in evidence any evidence he deems necessary
> to contradict or supplement any information contained in the presentence
> investigation report.
>
> Therefore, "[t]he trial judge here, sitting without a jury, had broad discretion
> in the things he was able to consider. He may appropriately conduct an inquiry
> broad in scope, largely unlimited as to the kind of information he may
> consider, or the source from which it may come." *Evans v. State*, 547 So. 2d
> 38, 41 (Miss. 1989) (citing *United States v. Barnett*, 587 F.2d 252 (5th Cir.
> 1979)). "The imposition of a sentence is within the discretion of the trial court,
> and this Court will not review the sentence, if it is within the limits prescribed
> by statute." *Reynolds v. State*, 585 So. 2d 753, 756 (Miss. 1991) (citing *Reed
> v. State*, 536 So. 2d 1336, 1339 (Miss. 1988)), *Boyington v. State*, 389 So. 2d
> 485 (Miss. 1980)). "In imposing sentence, the trial court may take into account
> larger societal concerns, as long as the sentence is particularized to the
> defendant." *Reynolds*, 585 So. 2d at 756 (citation omitted). We find the trial
> judge did not abuse his discretion here.

*Summerall*, 734 So. 2d at 246-47 (Miss. App. 1999). (Emphasis added). Although *Summerall* involved a sentencing by the court, sitting without a jury in a non-capital case,[6] pursuant to URCCC 10.04(C), we find *Summerall* to be directly on point. Under both URCCC 10.04 (B) (sentencing by the jury) and URCCC 10.04(C) (sentencing by the judge), we find this identical provision: "The state may introduce evidence of aggravation of the offense of which the defendant has been adjudged guilty." Thus, if, as stated in *Summerall*,[7] admission of evidence of other crimes was proper under URCCC 10.04(C)(2) before the sentencing judge, it necessarily follows that admission of evidence of other crimes (including convictions) would likewise be proper under URCCC 10.04(B)(1) before the sentencing jury. After all, the *sentencing jury* should have available to it the same information as the *sentencing judge*, in order to arrive at the appropriate punishment. Certainly, while Taggart's 1986 Texas conviction for robbery would be totally irrelevant during the guilt/innocence phase of the trial, such information of prior criminal activity on the part of Taggart would be wholly relevant in aiding the jury to reach its decision as to whether Taggart should be sentenced to life imprisonment.

---

[6]Pursuant to Miss. Code Ann. § 1-3-4 (Rev. 2005), the term "capital case" or "capital offense," when used in our statutes, denotes a criminal offense which is "punishable by death or imprisonment for life in the state penitentiary." On the other hand, the term "capital murder" denotes a criminal offense which is punishable by death or life imprisonment.

[7]In *Summerall*, the Court of Appeals relied on, *inter alia*, *Evans v. State*, 547 So. 2d 38, 41 (Miss. 1989). *See also Reynolds v. State*, 585 So. 2d 753, 756 (Miss. 1991). *Summerall*, 734 So. 2d at 246.

21

¶30.   URCCC 10.04(B) sets out the order of proof.  First, the prosecution may introduce "evidence of aggravation of the offense" for which the defendant has been convicted. Next, the defendant has the opportunity to then introduce "any evidence of extenuation or mitigation."  Finally, if the prosecution so chooses, it "may introduce evidence in rebuttal of the evidence of the defendant."

¶31.   We also take this opportunity to make a few additional observations about sentencing in general.  There are at least four generally recognized factors that any sentencing judge should consider in the exercise of discretionary sentencing of any defendant who stands before the court for imposition of sentence: (1) Rehabilitation; (2) Retribution; (3) Separation from society; and, (4) Deterrence, both general and specific.  The judge, in exercising individualized sentencing, and considering all information that the judge may have on the particular defendant, should consider what sentence will hopefully have a rehabilitative effect on the defendant.  The judge, in exercising individualized sentencing, should consider what sentence will hopefully have a retributive effect on the defendant – in other words, recognizing that society's law-abiding citizens have a right to expect from their judges that once a defendant is convicted of a crime, that defendant will "pay" for that crime, what sentence will appropriately punish that defendant for his/her crime.  The judge, in exercising individualized sentencing, should consider whether the nature of the crime, the defendant's background, including the defendant's prior criminal history, and other relevant information requires that the defendant be punished by way of separation from society through a penitentiary sentence.  Finally, the judge, in exercising individualized sentencing, should

22

consider what sentence will hopefully have both a general and specific deterrent effect – in other words, a sentence that will generally deter society as a whole from engaging in criminal activity, and will specifically deter the particular defendant from engaging in future criminal activity. Again, we find that the sentencing jury should be able to consider the same factors as the sentencing judge, and the jury should be allowed to receive that information via appropriately admitted evidence in order to aid the jury in fulfilling its statutorily mandated sentencing duties.

¶32. Other cases are also instructive. In ***Hodges v. State***, 912 So. 2d 730 (Miss. 2005), Quintez Wren Hodges had been convicted of capital murder and sentenced to death. On appeal, Hodges raised roughly eighteen issues, including an attack on what he believed to be inadmissible prejudicial evidence offered during the sentencing phase. Hodges's sister had testified on direct examination that her brother was a normal child who never got into trouble. On cross-examination, the prosecution inquired whether she was aware of her brother's school burglary and a separate burglary and sexual assault. Hodges argued that this evidence of prior bad acts and crimes was inadmissible as being irrelevant to prove any of the statutory aggravating factors. *See* Miss. Code Ann. § 99-19-101(5) (Rev. 2000). Even though ***Hodges*** involved the prosecution's rebuttal of the defendant's evidence of extenuation or mitigation, we find the ***Hodges*** discussion relevant:

> ¶40. Hodges also argues that the admission of these prior bad acts were prohibited, since they were not relevant to any of the statutory aggravating factors enumerated in Miss. Code Ann. § 99-19-101(5). Hodges alleges that the State is only allowed to offer evidence that is relevant to the statutory aggravating circumstances. However, Miss. Code Ann. § 99-19-101(1)

23

provides that at the sentencing hearing "evidence may be presented as to any matter that the court deems relevant to sentence, **and** shall include matters relating to any of the aggravating or mitigating circumstances." This Court has stated that the statute "does not limit the evidence that can be presented at the sentencing phase to evidence relevant to the aggravating circumstances." *West v. State*, 820 So. 2d 668, 670 (Miss. 2001). As discussed above, these prior bad acts were introduced when the defense opened the door to Hodges' character. Since § 99-19-101(1) allows any evidence that the court deems relevant to sentence **and** because these acts were relevant to rebut the direct testimony of Hodges' character, this assignment of error is without merit. This Court has also held that "the State is allowed to rebut mitigating evidence through cross-examination, introduction of rebuttal evidence or by argument." *Wiley v. State*, 750 So. 2d 1193, 1202 (Miss. 2000) (quoting *Turner v. State*, 732 So. 2d 937 at 950). As stated previously, these prior bad acts were admissible as proper rebuttal evidence. Therefore, this issue is without merit.

*Id.* at 756. (Emphasis added). In *Hodges*, this Court unequivocally stated that during the sentencing phase of a capital murder trial, the State was not limited to presenting relevant evidence which went only to rebuttal of the defendant's mitigating evidence. Instead, we expressly stated that *any evidence* which the trial court deemed to be relevant to sentence was admissible at the sentencing phase. Even though the sentencing hearings in death penalty cases are guided by statute, as opposed to uniform rule, we can logically deduce that if, in those cases where the sentencing jury is considering whether to impose the death penalty, the judge has discretion to allow the sentencing jury to consider "any evidence that the court deems relevant to sentence," then certainly the trial judge should not be hamstrung in non-death penalty cases concerning the admissibility of relevant evidence – such as a prior conviction – which would appropriately guide the sentencing jury in considering whether to impose life imprisonment upon a defendant convicted of kidnapping, rape and/or armed robbery.

24

¶33.    In *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d

350 (1998), the U.S. Supreme Court was confronted with an appeal involving a deported

alien who impermissibly returned to the United States and committed a crime. Prior to his

deportation, the alien had committed crimes. One of the issues before the Court was whether

the district judge had imposed an excessive sentence upon the defendant by interpreting the

applicable statute as authorizing enhanced punishment due to prior convictions, as opposed

to establishing a separate crime for which the defendant must be specifically indicted. We

find the following language from *Almendarez-Torres* instructive:

> At the outset, we note that the relevant statutory subject matter is recidivism.
> That subject matter -- prior commission of a serious crime -- is as typical a
> sentencing factor as one might imagine. See, *e.g.*, USSG §§ 4A1.1, 4A1.2
> (Nov. 1997) (requiring sentencing judge to consider an offender's prior record
> in every case); 28 U.S.C. § 994(h) (instructing Commission to write
> Guidelines that increase sentences dramatically for serious recidivists); 18
> U.S.C. § 924(e) (Armed Career Criminal Act of 1984) (imposing significantly
> higher sentence for felon-in-possession violation by serious recidivists); 21
> U.S.C. §§ 841(b)(1)(A)-(D) (same for drug distribution); United States
> Sentencing Commission, 1996 Sourcebook of Federal Sentencing Statistics 35,
> 49 (for year ending Sept. 30, 1996, 20.3% of all federal cases involved
> offenders with substantial criminal records (criminal history categories IV-VI);
> 44.2% of drug cases involved offenders with prior convictions).

523 U.S. at 230, 118 S.Ct. at 1224, 140 L.Ed.2d at 359.  Later in *Almendarez-Torres*, the

Court had this to say:

> First, the sentencing factor at issue here -- recidivism -- is a traditional, if not
> the most traditional, basis for a sentencing court's increasing an offender's
> sentence. See, *e.g.*, *Parke v. Raley*, 506 U.S. 20, 26, 121 L. Ed. 2d 391, 113 S.
> Ct. 517 (1992) (Recidivism laws "have a long tradition in this country that
> dates back to colonial times" and currently are in effect in all 50 States); U.S.
> Dept. of Justice, Office of Justice Programs, Statutes Requiring the Use of
> Criminal History Record Information 17-41 (June 1991) (50-state survey);

25

USSG §§ 4A1.1, 4A1.2 (Nov. 1997) (requiring sentencing court to consider defendant's prior record in every case).

523 U.S. at 243, 118 S.Ct. at 1230-31, 140 L.Ed.2d at 368.

¶34. As the U. S. Supreme Court acknowledged, recidivism has been recognized since "colonial times," as one of the most important factors – if not the most important factor – in considering whether a criminal offender's sentence should be enhanced or increased upon being convicted yet again for criminal activity. It would thus defy logic to deny the sentencing jury the benefit of this critical information concerning a criminal's recidivism.

¶35. In sum, we find that Taggart's 1986 Texas robbery conviction was relevant for the sentencing jury, consistent with URCCC 10.04(B)(1), and our case law. *See also* Miss. R. Evid. 401, 403. It necessarily follows that the trial court did not abuse its discretion in admitting this evidence during the sentencing phase of Taggart's trial. Therefore, we find this issue to be without merit.

## CONCLUSION

¶36. For the reasons stated, the DeSoto County Circuit Court judgment of conviction for rape, kidnapping and armed robbery and Taggart's separate sentences of life imprisonment to run consecutively are affirmed.

¶37. **COUNT 2: CONVICTION OF FORCIBLE RAPE AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT 3: CONVICTION OF KIDNAPPING AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT 4: CONVICTION OF ROBBERY USING A DEADLY WEAPON AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCES SHALL RUN CONSECUTIVELY.**

26

**SMITH, C.J., WALLER, P.J., EASLEY, DICKINSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. DIAZ, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. LAMAR, J., NOT PARTICIPATING.**