# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CP-00860-COA

**BENJAMIN MOSES COOK A/K/A BEN**                                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                                                              APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 05/18/2018 |
| TRIAL JUDGE: | HON. DAVID H. STRONG JR. |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BENJAMIN MOSES COOK (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DARRELL CLAYTON BAUGHN |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 08/20/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE BARNES, C.J., McDONALD AND C. WILSON, JJ.

### BARNES, C.J., FOR THE COURT:

¶1.    In 1994, Benjamin Cook was convicted of murder and armed robbery by a Pike County Circuit Court jury.  The circuit court sentenced him to life in the custody of the Mississippi Department of Corrections for murder; for armed robbery, he received a twenty-year sentence.

¶2.    Cook became eligible for parole in 2013.  He was denied parole on three occasions between 2013 and 2017.  On July 19, 2017, the Mississippi Parole Board granted Cook parole but subsequently rescinded it on September 19, 2017, due to the serious nature of the offense and community response in opposition to parole.

¶3.    On January 19, 2018, Cook filed a "Motion to Correct the Judgment of Parole" as a

petition for post-conviction relief (PCR) under the Uniform Post-Conviction Collateral Relief Act (UPCCRA) in Pike County.[1]  He argued that the Parole Board unlawfully revoked his parole, and he requested that his parole be reinstated.  The circuit court dismissed the motion, finding that it had "no jurisdiction over the action or inaction of the Mississippi Parole Board."  Cook appeals, and finding no error, we affirm.

## DISCUSSION

### I.      Whether the circuit court erred in dismissing Cook's motion.

¶4.     Cook challenges the circuit court's dismissal of his motion, arguing that (1) the Parole Board "overstepped its statutory authority by deciding to grant parole and two months later[,] denying that parole"; and (2) the circuit court had jurisdiction over the unlawful revocation of his parole.

¶5.     We find no merit to Cook's claims.  "By statute, the Parole Board is given 'absolute discretion' to determine who is entitled to parole within the boundaries of factors set forth in Miss[issippi] Code Ann[otated section] 47-7-3." *Cotton v. Miss. Parole Bd.*, 863 So. 2d 917, 921 (¶11) (Miss. 2003).  Thus, "the grant or denial of parole is entirely within the Parole Board's discretion, and the denial of parole is not subject to a statutory right of appeal." *Willard v. Miss. State Parole Bd.*, 212 So. 3d 80, 86 (¶19) (Miss. Ct. App. 2016).

¶6.     Regarding the circuit court's jurisdiction, we find it important to emphasize that Cook's parole was not revoked.[2]  As the circuit court aptly notes, the Parole Board "revoked

---

[1] Miss. Code Ann. § 99-39-1, et seq. (Rev. 2015).

[2] Revocation of parole would have given the circuit court jurisdiction under Mississippi Annotated Code section 99-39-5(1)(h) (Rev. 2015), which provides that a

2

[*its*] *decision* and den[ied] his parole." (Emphasis added). In *Cotton*, the Mississippi Supreme Court upheld a circuit court's dismissal of a prisoner's petition for lack of jurisdiction because there was no statute "granting circuit courts jurisdiction over appeals concerning the denial of parole." *Cotton*, 863 So. 2d at 921 (¶10). Even though a "constitutional challenge can justify the assertion of jurisdiction, . . . that duty only arises when certain criteria are met." *Id*. at 921 (¶11). Because a defendant has "no liberty interest in obtaining parole in Mississippi, he cannot complain of the denial of parole based on an allegation of a denial of due process, abuse of discretion, or consideration of false or improper factors." *Mangum v. Miss. Parole Bd.*, 76 So. 3d 762 768-69 (¶17) (Miss. Ct. App. 2011). Here, Cook was never released on parole; the Parole Board changed its decision and denied Cook parole. Accordingly, this case is not one of unlawful revocation of parole. Therefore, Cook failed to state a claim upon which the circuit court could assert jurisdiction, and we affirm the dismissal of the motion.[3]

**II.     Whether the circuit court should have denied Cook's motion to proceed in forma pauperis on appeal.**

¶7.     Cook filed his motion as a PCR petition under the UPCCRA, challenging the "unlawful revocation" of his parole. The State asserts that Cook's motion was not a PCR motion but a purely civil action; therefore, the circuit court erred in granting Cook leave to

---

petitioner may file a PCR motion alleging that his sentence has expired, that his parole was unlawfully revoked, or that "he is otherwise unlawfully held in custody."

[3] The State raises several other bases for the dismissal of Cook's motion (e.g., failure to serve process on defendants, improper venue, statute of limitations, etc.). We find it unnecessary to address these arguments based on our determination of the jurisdictional issue.

3

file his appeal in forma pauperis.

¶8.     Mississippi Code Annotated section 99-39-25 (Rev. 2015) "expressly permits a claimant under the [UPCCRA] to appeal 'on such terms and conditions as are provided for in criminal cases.'" *Jefferson v. State*, 96 So. 3d 709, 712 (¶13) (Miss. Ct. App. 2012) (citing Miss. Code Ann. § 99-39-25 (Rev. 2007)).[4]  Therefore, a petitioner proceeding under the UPCCRA "is allowed to proceed [IFP] in perfecting his appeal to the Mississippi Supreme Court." *Morris v. State*, 125 So. 3d 79, 80 (¶2) (Miss. Ct. App. 2013).  Cook filed his motion under the UPCCRA alleging the unlawful revocation of his parole.  Although he misinterpreted the effect of the Parole Board's decision, he has alleged unlawful revocation of parole both at trial level and on appeal.  Accordingly, there was no error in the circuit court's decision to grant him leave to proceed in forma pauperis on appeal.

¶9.     **AFFIRMED.**

        **CARLTON AND  J. WILSON, P.JJ., GREENLEE,  TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.  WESTBROOKS, J., CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD, J.; McCARTY, J., JOINS IN PART.**

        **WESTBROOKS, J., CONCURRING:**

¶10.    I completely agree with the majority's opinion. It is clear that the circuit court does not have the authority to determine an inmate's entitlement to parole.  It is also true that circuit courts do not have any statutory authority to hear appeals for parole denials.  I write separately only to respectfully discourage parole boards from rescinding grants of parole even in the wake of community pressure as it potentially undermines the rehabilitative nature

---

[4] The statutory language from the 2007 revision and the 2015 revision is identical.

of punishment.

¶11.     The Supreme Court has held that a trial judge should consider retributive theories as well as utilitarian theories (deterrence, separation from society, and rehabilitation) at sentencing; though not the sole justification for punishment, offender rehabilitation remains a consideration. *Taggart v. State*, 957 So. 2d 981, 994 (¶31) (Miss. 2007). In other words, we do not punish solely to rehabilitate the offender but also so that the offender may demonstrate reformation.[5]  Such transformation should be encouraged amongst those incarcerated and the eligibility for parole is a method of accomplishing that goal. It is my opinion that it is not unreasonable for a parole board to consider the same theories that are imposed upon a trial judge at sentencing.

¶12.     Cook's 23 years of incarceration satisfies the retributive theory as well as the separation from society's aspect of the utilitarian theory. Clearly, Cook must have

---

[5] Professor Chad Flanders explains:

> The idea of rehabilitation as moral reform is in fact a very old idea, and possibly the oldest association between punishment and rehabilitation. It is at least as old as the penitentiary, where convicts were meant to go and, in solitude, reflect on their wrongs and show penance for them. We punish with the hope that this will induce the offender to reflect and become a morally better person; but of course punishment is neither necessary nor sufficient for a person to reform. You can be punished but not reform, and you can reform without being punished. Reform does not happen by punishing; rather, it is what punishing is supposed to spur. It is not obvious how this reform was supposed to happen. Perhaps being punished was enough to induce in the offender feelings of remorse and repentance. Perhaps it was through being isolated from outside, corrupting influences that prisoners could finally have a chance to reform. Or perhaps it was a little of both.

Chad Flanders, *The Supreme Court and the Rehabilitative Ideal*, 49 Ga. L. Rev. 383, 400 (2015).

5

demonstrated a remarkable transformation and satisfactorily proven he was deterred from further criminal behavior if the parole board granted him parole, despite three separate prior parole denials. The board was also required to give notice to the victim's families under Mississippi Code Annotated Section 47-7-17 (Rev. 2015) and likely heard from them prior to granting Cook parole status in light of the serious nature of the underlying conviction. Because Cook was considered and was deemed eligible for parole, it is my humble opinion he should have retained the grant of parole.[6]

**McDONALD, J., JOINS THIS OPINION. McCARTY, J., JOINS THIS OPINION IN PART.**

---

[6] "[I]t does not follow that we should continue to punish the prisoner who demonstrates a transformation." Michael Vitiello, *Reconsidering Rehabilitation*, 65 Tul. L. Rev. 1011, 1046 (1991).