# Richmond

## WELTON WALTER ETHERIDGE v. COMMONWEALTH OF VIRGINIA.

December 1, 1969.

Record No. 7055.

Present, All the Justices.

*James N. Garrett* (*Garrett, Garrett & Garrett*, on brief), for plaintiff in error.

*A. R. Woodroof, Assistant Attorney General* (*Robert Y. Button, Attorney General*, on brief), for defendant in error.

CARRICO, J., delivered the opinion of the court.

The principal question in this criminal appeal is whether there was a fatal variance between the allegations of the indictment and the proof adduced at trial. A subsidiary question involves the interpretation of Code § 18.1-152[1].

---

[1] "§ 18.1-152. *Shooting at or throwing stones, etc., at train, car, vessel, etc.*—If any person maliciously shoot at, or maliciously throw any stones or other missiles at or against, any train or cars on any railroad or other transportation company or any vessel or other watercraft, or any motor vehicle or other vehicles when oc-

These questions arose during the jury trial of Welton Walter Etheridge, the defendant. He was charged with and convicted of a violation of Code § 18.1-152, and the jury fixed his punishment at five years in the penitentiary. The trial court overruled his motion to set aside the verdict and imposed the sentence fixed by the jury. We granted a writ of error.

The indictment upon which the defendant was tried alleged that he "did unlawfully, feloniously and maliciously shoot at or into a dwelling house, to-wit: the residence of Edna Harper located at Route 2, Box 224, Galbush Road, Chesapeake, Virginia." The evidence at trial showed that the defendant was involved in a shooting incident at a dwelling where Edna Harper was present. However, the incident was shown to have occurred not at the residence of Edna Harper as alleged in the indictment but at the residence of Alberta Riddick, located nearby the Harper dwelling.

The defendant contends that since the indictment alleged that the dwelling involved was the residence of Edna Harper, it was incumbent upon the Commonwealth to prove that he shot into that specific dwelling. When the Commonwealth proved instead that it was the residence of Alberta Riddick which was involved, there was, argues the defendant, a fatal variance.

The Attorney General contends, on the other hand, that the inclusion in the indictment of the words "the residence of Edna Harper" was mere surplusage and unnecessary to a valid charge of a violation of Code § 18.1-152 since the gravamen of an offense thereunder is that the dwelling be occupied by one or more persons. The Attorney General points out that the address listed in the indictment, "Route 2, Box 224, Galbush Road, Chesapeake, Virginia," was in reality the residence of Alberta Riddick where the shooting incident

cupied by one or more persons, or so shoot or throw into any dwelling house or other building when occupied by one or more persons, whereby the life of any passenger, or other person on such train or car, or on such vessel, or other water-craft, or in such motor vehicle or other vehicle, or in such building, may be put in peril, the person or persons so offending shall, upon conviction thereof, be punished by confinement in the penitentiary not less than two nor more than ten years; and, in the event of the death of any passenger or other person, resulting from such malicious shooting or throwing, the person so offending shall be deemed guilty of murder, the degree to be determined by the jury or the court trying the case without a jury. If any such act be committed unlawfully, but not maliciously, the person so offending shall, upon conviction thereof, be punished by confinement in the penitentiary not less than one nor more than three years, or, in the discretion of the jury or the court trying the case without a jury, be confined in jail not to exceed twelve months and fined not less than one hundred dollars nor more than five hundred dollars."

occurred. That was sufficient, the Attorney General says, to apprise the defendant of the location of the offense charged against him.

We agree with the defendant that a fatal variance existed between the allegations of the indictment and the proof of the crime. While it may not have been necessary under the statute to allege whose residence was fired into, when the Commonwealth chose to specify the residence involved as that of Edna Harper, it had the burden of establishing that fact. And when the Commonwealth showed that it was the residence of Alberta Riddick where the shooting occurred, it proved a different offense.

In *Mitchell* v. *Commonwealth*, 141 Va. 541, 560, 127 S.E. 368, 374 (1925), we said:

> ". . . If the unnecessary word or words inserted in the indictment describe, limit or qualify the words which it was necessary to insert therein, then they are descriptive of the offense charged in the indictment and cannot be rejected as surplusage. The offense as charged must be proved."

It was necessary under the statute for the Commonwealth to allege in the indictment that the defendant shot into a dwelling house while it was occupied by one or more persons. When the Commonwealth added the allegation that the dwelling house was the residence of Edna Harper, it described, limited, and qualified that which was necessary to be alleged, and the added language cannot, therefore, be treated as surplusage.

For the variance which existed, a reversal of the judgment of conviction is required. This brings us to the subsidiary question whether, upon further proceedings in the case, the trial court should repeat its rulings with respect to granting and refusing instructions concerning the application of Code § 18.1-152.

The court granted Instruction A, requested by the Commonwealth, and refused Instruction B-1, tendered by the defendant. The effect of these rulings was to permit the jury to find the defendant guilty if he shot either into or at a dwelling house.

The language of Code § 18.1-152 pertinent to a resolution of the question is as follows:

> "If any person maliciously shoot at . . . any train . . . or so shoot . . . into any dwelling house . . . [he] shall . . . be punished by confinement in the penitentiary not less than two or more than ten years. . . ."

The defendant contends that the statute makes it unlawful only to shoot *into* a dwelling house. The Attorney General contends that the statute applies to shooting *at or* into such a building, reaching his conclusion by saying that the words "so shoot" preceding the words "into any dwelling house" refer to the words "shoot at" in the first line of the statute.

We are of opinion that while it may be unlawful under the statute to shoot at a train, it is not unlawful to shoot at a dwelling house. With respect to a dwelling house, the statute is violated only if a person shoots into, that is, that the missile strikes or enters, such structure.

The word "so" in the phrase "so shoot" refers not to the words "shoot at" in the first line of the statute but to the word "maliciously" in the same line. That construction is required grammatically and is supported by later language of the statute which fixes a lesser penalty where the shooting is done unlawfully but not maliciously. (See footnote 1.) By its choice of the language "so shoot," the legislature thus prescribed malice as the element necessary to imposition of a greater penalty for the offense of shooting into a dwelling house.

It was error, therefore, to instruct the jury that the defendant could be found guilty for merely shooting at a dwelling house. That error should not be repeated upon further proceedings in the case.

The judgment of conviction is reversed, and the case is remanded.

*Reversed and remanded.*