569 So.2d 1188 (1990)
Bobby MAY
v.
STATE of Mississippi.
No. 07-KA-59045.
Supreme Court of Mississippi.
October 24, 1990.
Edwin A. Flint, Jr., Columbus, for appellant.
Mike C. Moore, Atty. Gen., John R. Henry Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and BLASS, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
Bobby May was indicted, tried and convicted in the Circuit Court of Lowndes County, Mississippi, on a charge of shooting into a building usually occupied by other people. He was sentenced to ten (10) years without probation or parole as an habitual offender pursuant to Miss. Code Ann. § 99-19-81 (Supp. 1977). He appeals to this Court and presents three issues for consideration.

FACTS
The appellant, Bobby May, and Virginia Parker lived together for a period of time but subsequently parted and went their separate ways. On the evening of April 14, 1984, Virginia went to the High Hat Club. She was standing next to three friends, Tommy Nations, Dale Rhodes, and Peggy Poole, when May walked into the club. He and Virginia had a verbal exchange. As May was leaving the club, he told Virginia that he was going to get a gun and blow her brains out.
Virginia, Dale Rhodes and Tommy Nations went to Nation's room, 151, at the Columbus Motel. The room was situated on the second floor, directly across from the top of the stairway, and had an aluminum storm door with a wooden door behind it.
Virginia was talking on the telephone with her friends, Peggy Poole and Debbie Adams, to ascertain whether it was safe for her to return to the High Hat Club when she heard a tap on the window. She turned and saw May standing outside the window. He was wearing a white pullover shirt, blue jeans and cowboy boots and said, "That's all I want to see." The wooden door had been open and the aluminum *1189 storm door was closed. Virginia shut the wooden door and locked it and her friends hid in the room.
Virginia testified that there was a bang on the door and then she heard a gunshot and the doorknob flew through the door. She fell to the floor and called the police by telephone. When she had finished her call, she heard sirens coming.
Paul Andrews was the desk clerk that evening. He heard the gunshot and looked out the door into the parking lot. He testified that he saw May coming from the stairwell carrying a shotgun and that he was wearing a white or light colored pullover shirt and blue jeans. According to Paul, May walked around to the corner of the building in the direction of the Sharecropper Lounge which was next door to the motel.
The police arrived at the motel soon after the shot was fired. Donald Freshour, an officer with the Columbus Police Department, responded to the call. When he arrived at room 151, he saw that the doorknob was off the door and lying next to the threshold. According to him, birdshot was scattered around the threshold of the door and he observed an empty 20-gauge yellow shotgun shell.
May's car was parked at the Columbus Motel. He was spotted by the police as he walked to his car coming from the direction of the Sharecropper Lounge. May was wearing a light-colored pullover shirt, blue jeans and cowboy boots. The police arrested him, but found no weapon. A loaded shotgun, however, was found in some bushes between the motel and the Sharecropper Lounge.
John O'Neill, an expert in the field of firearms identification, testified that the shotgun shell found at the threshold of room 151 was fired from the shotgun found in the bushes "to the exclusion of any other firearm." According to policeman, Mark Miller, he saw some yellow shotgun shells in May's automobile.
May was indicted on May 10, 1984, for shooting into the motel. He entered a plea of not guilty and was released on $5,000.00 bond. Trial was set for August 24, 1984, but May failed to appear for trial. He was not apprehended until December, 1987.

LAW

I. WAS THE JURY VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
Section 97-37-29 of Miss. Code Ann. (1972) states the offense for which appellant, Bobby May, was convicted:
Shooting into dwelling house.
If any person shall willfully and unlawfully shoot or discharge any pistol, shotgun, rifle or firearm of any nature or description into any dwelling house or any other building usually occupied by persons, whether actually occupied or not, he shall be guilty of a felony whether or not anybody be injured thereby... . (emphasis added)
May contends that the jury verdict is against the overwhelming weight of the evidence because the State did not prove that the shot went into the building. From facts hereinabove and set forth, we note that the investigating officer testified that the doorknob of the room had fallen to the floor and that pellets were scattered around the threshold of the door. Photographs of the outside of the door reflect the condition of the outside doorknob and that holes appeared where the pellets entered the door. The photographs did not show the inside of the door as to the condition of the doorknob at that point or where pellets exited from the inside. The State contends that the legislature intended to prohibit the striking of a building usually occupied by other people regardless of the degree of penetration of the missile.
The State of Virginia had a statute similar to that of Mississippi. In Etheridge v. Commonwealth, 210 Va. 328, 171 S.E.2d 190 (1969), the defendant raised the same argument that May now raises. The Supreme Court of Appeals of Virginia held:
We are of opinion that while it may be unlawful under the statute to shoot at a train, it is not unlawful to shoot at a dwelling house. With respect to a dwelling house, the statute is violated only if a *1190 person shoots into, that is, that the missile strikes or enters, such structure.
Id. at 331, 171 S.E.2d at 192 (emphasis added)[1].
The evidence is overwhelming that the pellets, or some of them, from the shotgun went into the exterior of the door. We are of the opinion that the meaning and intention of the statute were met and this issue is resolved against the appellant.

II. DID THE PROSECUTING ATTORNEY COMMIT REVERSIBLE ERROR BY MAKING IMPROPER AND PREJUDICIAL COMMENTS DURING HIS CLOSING ARGUMENT?
In his closing argument, the Assistant District Attorney stated the following:
First of all, ladies and gentlemen, what do you think Bobby May was going to do when he got inside that room? I'll give you a hint. He'd reloaded the shotgun. Ladies and gentlemen, but for the quick reaction of the Columbus Police Department, the case you would be trying today would be a murder.
May contends that the above comments were mere speculation and they were prejudicial to his case. However, he did not object to the comments and, as a result, he did not preserve the point for appeal. Dunaway v. State, 551 So.2d 162, 164 (Miss. 1989); Wilks v. State, 408 So.2d 68, 69 (Miss. 1981).
In Johnson v. State, 477 So.2d 196 (Miss. 1985), cert. denied, 476 U.S. 1109, 106 S.Ct. 1958, 90 L.Ed.2d 366 (1986), the Court stated:

[I]t is the duty of a trial counsel, if he deems opposing counsel overstepping the wide range of authorized argument, to promptly make objections and insist upon a ruling by the trial court. The trial judge first determines if the objection should be sustained or overruled. If the argument is improper, and the objection is sustained, it is the further duty of trial counsel to move for a mistrial. The circuit judge is in the best position to weigh the consequences of the objectionable argument, and unless serious and irreparable damage has been done, admonish the jury then and there to disregard the improper comment.

Id. at 209-10 (emphasis added).
Among the Court's instructions was C.01:
Arguments, statements, and remarks of counsel are intended to help you understand the evidence and apply the law, but are not evidence. Any argument, statement, or remark having no basis in the evidence should be disregarded by you.
This issue is resolved against the appellant.

III. DID THE LOWER COURT ERR IN DENYING MAY'S REQUEST FOR A CONTINUANCE?
May contends that he did not receive the discovery material in sufficient time to make use of it. He did not request the material until three weeks before trial and he received the requested information five days before trial and failed to request a continuance until the day before trial. We have carefully reviewed the record and briefs with reference to this issue and are of the opinion there is no merit in it. Therefore, the issue is resolved in favor of the State.
There being no reversible errors in the trial below, the judgment of the lower court is affirmed.
CONVICTION OF SHOOTING INTO A BUILDING USUALLY OCCUPIED BY OTHER PEOPLE AND SENTENCE OF TEN (10) YEARS AS AN HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT PROBATION OR PAROLE AFFIRMED.
*1191 HAWKINS and DAN M. LEE., P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ. concur.
NOTES
[1] In Dowdy v. Commonwealth, 220 Va. 114, 255 S.E.2d 506 (1979), the court pointed out that the legislature amended the statute to make it "unlawful to shoot `at ... or against' an occupied building" following the Etheridge opinion. Id. at 117, 255 S.E.2d at 508.