734 So.2d 242 (1999)
Frederick SUMMERALL a/k/a Fredrick L. Sumrall a/k/a Fredrick Lee Sumrall, Sr. a/k/a `Freddie', Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-00949COA.
Court of Appeals of Mississippi.
January 26, 1999.
*243 H.W. `Sonny' Jones, Jr., Meridian, Attorney for Appellant.
Office of the Attorney General by Jean Smith Vaughan, Attorney for Appellee.
BEFORE THOMAS, P.J., COLEMAN, AND DIAZ, JJ.
DIAZ, J., for the Court:
¶ 1. Frederick Sumrall was tried and convicted of sale of cocaine in the Clarke County Circuit Court. Aggrieved of this judgment, Sumrall appeals to this Court asserting the following issues as error: (1) the trial court erred by admitting an audiotape into evidence because the State failed to comply with Mississippi Code Annotated §§ 41-29-501 through XX-XX-XXX, dealing with the interception, recording, and admissibility of oral communications; (2) the evidence was insufficient to support a verdict of guilty; and (3) the trial court received improper evidence at the sentencing hearing. Finding no error, we affirm.

FACTS
¶ 2. On May 14, 1996, Narcotics Agents Jimmy Kirkman, Allen Anderson, Gartell Willis, and C.J. Cranford, met in Clarke County, Mississippi to discuss plans to conduct an undercover drug investigation in Quitman, Mississippi. Agent Anderson was provided a body transmitter and $100 in state funds. Anderson traveled to a trailer on Bay Street in Quitman. Anderson knew this trailer was the residence of Freddie Sumrall. When Anderson arrived no one was at the trailer. He left the trailer and as he was driving through Quitman, he noticed a vehicle he believed to be Sumrall's. He met the vehicle, turned around, got behind it, and followed the vehicle back to Sumrall's residence. Anderson parked on the side of the street, and Sumrall parked on the opposite side. Anderson indicated that he wanted to buy something. Sumrall asked him how much, and Anderson indicated that he wanted to purchase $100 worth of crack cocaine. Sumrall asked Anderson to return in ten minutes. When Anderson returned, Sumrall and two other males were walking away from the trailer, and Sumrall told Anderson to park in the parking lot of the Sumrall Park by the pavilion. Sumrall was standing beside Anderson's vehicle and started questioning Anderson about whether he was a narcotic's officer. Anderson denied this and after a lengthy discussion, the two walked to a picnic table. Sumrall sat at the picnic table and told Anderson, "it's in the bag." Anderson saw what appeared to be crack cocaine in a plastic bag inside a white paper bag. Anderson gave Sumrall $100. The two talked for a little while and Anderson drove away.
¶ 3. Agents Kirkman, Willis, and Cranford provided surveillance in their vehicle by listening to the transmission over the body transmitter, but were unable to see the transaction.
¶ 4. Anderson then proceeded to a post-buy meeting. Agent Joey Waller, who was in charge of the Wayne/Clarke/Jasper Narcotics Task Force at the time of the sale, met the officers at the post-buy meeting. Anderson handed Waller the crack cocaine and the audiotape. Waller took the cocaine to the Meridian Crime Lab.
¶ 5. Grady Downey, a forensic scientist from the Mississippi Crime Laboratory, testified that he had analyzed the rocks and determined that they were cocaine. Thereafter the State rested.
¶ 6. Demarco Clark was first to testify for the defense. He testified that he was in Sumerall Park on May 14, 1996. Clark stated that he was eating chicken at the picnic table when Anderson drove up. He *244 testified that he did not see any transaction occur between Anderson and Sumrall. During cross-examination, Clark denied that he had told the prosecutor that he reached the park after Anderson had arrived.
¶ 7. The defense next called Terrance Thigpen. Thigpen was in prison garb and testified that he was incarcerated at the South Mississippi Correctional Institution in Leaksville, Mississippi for the sale of crack cocaine. Thigpen testified that he was in the Sumerall Park on May 14, 1996. He stated that he saw a guy pull up in a car and then approach Sumrall and ask to buy some cocaine. Thigpen testified that no one sold the man cocaine and he did not see any money change hands. During cross-examination, Thigpen testified that he did not see any drugs, but did see the agent put something in a Sprite can, get a bag, and leave.
¶ 8. Frederick Lee Sumrall testified on his own behalf. He testified that Anderson pulled up to his trailer while he was sweeping. Anderson asked him if anyone had "anything." Sumrall stated that he told Anderson to check with some men that were in the park. Anderson stated that he would be back in ten minutes. Anderson arrived twenty to twenty-five minutes later and got out of his vehicle. Sumrall asked Anderson if he was "a narcotics." He testified that Anderson became mad and started cussing him. Sumrall stated that he did not say anything about any drugs, nor did he see any that day. As Anderson was leaving, he picked up a bag and walked off. Sumrall did not see any money. Right before Anderson left he pitched a drink can at Sumrall. Sumrall testified he did not know what was in the can.
¶ 9. During cross-examination, Sumrall testified that Anderson had been to his trailer before and asked him several times for drugs. Sumrall told Anderson each time that he did not sell drugs. On May 14, 1996, when Anderson drove up the first time, Sumrall told Anderson he did not have any drugs, but told him that one of the men in the park may have drugs. Sumrall then asked some men in the park if they had "anything," and one "said something about 10 minutes, and I referred him to 10 minutes." When Anderson came back, Sumrall asked Anderson if he was a narcotic's agent. Anderson denied this. After talking, while sitting on a picnic table, Anderson looked inside a bag and picked it up. As Anderson was leaving, he picked up a drink can that was on the ground and pitched it toward Sumrall.
¶ 10. After Sumrall testified, the defense rested. The State called Agent Anderson as a rebuttal witness. The prosecution asked Anderson whether he possessed a Sprite can that day. Anderson testified that when Sumrall told him to come back in ten minutes, he went to a convenience store and purchased a Sprite. When he came back, Anderson had the can in his hand. Anderson transferred the money to Sumrall by handing Sumrall the money between his hand and the can.
¶ 11. Thereafter, the State and defense finally rested. After deliberations, the jury agreed with the State's version of events and found Sumrall guilty of sale of cocaine.

DISCUSSION

I. THE STATE FAILED TO COMPLY WITH MISSISSIPPI CODE ANNOTATED SECTIONS 41-29-501 THROUGH XX-XX-XXX, DEALING WITH THE INTERCEPTION, RECORDING, AND ADMISSIBILITY OF ORAL COMMUNICATIONS.
¶ 12. Mississippi Code Annotated §§ 41-29-501 to -537 (Rev.1993 & Supp. 1998) deals with the interception of wire or oral communications. During Sumrall's trial, the State introduced a tape recording of the drug transaction. Agent Kirkman testified to the contents of the tape. Sumrall argues in his brief that the court below ignored the mandates of Mississippi Code *245 Annotated §§ 41-29-501 to -537; however, Sumrall does not point this Court to the specific section, or sections which the lower court failed to follow.
¶ 13. At the outset we must note that Sumrall did not object to the admission of the tape. Since he did not make this argument to the trial judge he is consequently procedurally barred on appeal from raising an argument not put before the trial court. Handley v. State, 574 So.2d 671, 678 (Miss.1990); May v. State, 569 So.2d 1188, 1190 (Miss.1990); Dunaway v. State, 551 So.2d 162, 164 (Miss. 1989); Marks v. State, 532 So.2d 976, 984 (Miss.1988); Burney v. State, 515 So.2d 1154, 1157 (Miss.1987); Sand v. State, 467 So.2d 907, 910 (Miss.1985); Woods v. State, 393 So.2d 1319, 1325 (Miss.1981). Since no objection appeared in the record, and a contemporaneous objection is necessary to preserve an issue for appeal, the Court will presume that the trial court acted properly. Moawad v. State, 531 So.2d 632, 635 (Miss.1988); Ratliff v. State, 313 So.2d 386, 388 (Miss.1975).
¶ 14. Despite this procedural bar, Sumrall's first assignment of error is also without merit. The Mississippi Supreme Court recently addressed this Act and stated:
It is clear from a reading of the definitions and terms of the Act that the Act was intended to regulate recordings by the State of two or more parties without the knowledge of any of the parties. The Act was not intended to prevent police officials from outfitting police agents or confidential informants with "body wires" for use during police investigative activities.
Ott v. State, No. 97-KA-00718-SCT, 1998 WL 718242, at *8, 722 So.2d 576 (Miss. 1998). Therefore, the proper interpretation of this Act allows the evidence obtained from the transmission between Agent Anderson and Sumrall to be introduced at trial.
¶ 15. The State may introduce a recording of a drug transaction during trial. See Doby v. State, 557 So.2d 533, 541 (Miss.1990); Middlebrook v. State, 555 So.2d 1009, 1011-12 (Miss.1990). First, as a condition precedent to the admittance of this evidence, the tape must meet the requirement of authentification, under Mississippi Rule of Evidence 901. Doby, 557 So.2d at 541; Middlebrook, 555 So.2d at 1011-12. If a recording is properly authenticated pursuant to Rule 901(a) and relevant under 401 of the Mississippi Rules of Evidence, it is admissible. Middlebrook, 555 So.2d at 1011-12. The trial judge has broad discretion over the admissibility of evidence and will only be reversed for an abuse of discretion. Coleman v. State, 697 So.2d 777, 784 (Miss. 1997).
¶ 16. Kirkman testified and described the manner in which the recording was made. He testified that he had listened to the tape and the tape accurately reflected what he had heard over the body wire on May 14, 1996. The agent also testified that the tape had been kept in his custody or in a vault after the incident up until trial. The tape was properly authenticated and relevant within Mississippi Rules of Evidence 901 and 401. This issue has no merit.

II. THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A VERDICT OF GUILTY OF SALE OF COCAINE.
¶ 17. Sumrall opines that the evidence adduced at trial was insufficient to support the verdict since the proof was only the testimony of one law enforcement officer against the testimony of himself and two other witnesses. He argues that none of the surveillance agents or other witnesses confirmed that a sale took place or that he delivered anything to Anderson. Clark and Thigpen, who were present that day, did not see any drugs or money pass. He denied that he delivered any drugs to Anderson or that he got any money from him. Sumrall believes that since this case amounted to the testimony of one State *246 witness and even giving the State the benefit of all favorable inferences that may be drawn from such testimony, the evidence did not amount to substantial evidence of such quality and weight as would allow his conviction to stand under a beyond a reasonable doubt burden of proof standard.
¶ 18. In reviewing the legal sufficiency of the evidence, our authority to disturb the jury's verdict is quite limited. Clayton v. State, 652 So.2d 720, 724 (Miss.1995). We consider the evidence in the light most consistent with the verdict. Id. We must give the prosecution the benefit of "all favorable inferences that may reasonably be drawn from the evidence." Id. We may not reverse unless one or more of the elements of the offense charged is such that reasonable and fairminded jurors could only find the accused not guilty. McClain v. State, 625 So.2d 774, 778 (Miss. 1993).
¶ 19. The jurors resolved questions reasonably in favor of the State and there is sufficient evidence to support the verdict. The jury has the benefit of having seen witnesses before them, in person. Culberson v. State, 379 So.2d 499, 503 (Miss. 1979). Contradictions in testimony may be explained, and the jury may accept the explanations given, that is their prerogative. The jury may choose to believe or disbelieve any testimony presented and attach as much or as little weight to a particular piece of evidence as they wish. Even if the testimony of the witnesses is contradictory, we must remember that the jury is the ultimate trier of fact and may weigh the testimony of each witness in determining the credibility of the witness, and the jury may choose not to believe any of the witnesses. Accordingly, the verdict of the jury should not be reversed.

III. THE TRIAL COURT RECEIVED IMPROPER EVIDENCE AT THE SENTENCING HEARING.
¶ 20. In his last assignment of error, Sumrall argues that the trial court erred in admission of evidence during the sentencing hearing. Specifically, he objects to the testimony of Agent Kirkman which informed the court of complaints from the community that Sumrall had been selling drugs, the pre-buy operation to investigate the complaints, known as intel buys, and four more felony sale cases against him. Sumrall failed to give any legal citation to support his claim that the trial court received improper evidence during the sentencing hearing. Failure to cite to legal authority bars any consideration of the assigned error. McClain v. State, 625 So.2d 774, 781 (Miss.1993) (citing Brown v. State, 534 So.2d 1019, 1023 (Miss.1988); Shive v. State, 507 So.2d 898, 900 (Miss. 1987); Pate v. State, 419 So.2d 1324, 1326 (Miss.1982)).
¶ 21. Notwithstanding this procedural bar, this issue has no merit. Rule 10.04(C)(2) and (3) of the Uniform Circuit and County Court Rules states in pertinent part:
(b) The State may introduce evidence of aggravation of the offense to which the defendant has been convicted or pleaded guilty.
(c) The defendant may introduce in evidence any evidence he deems necessary to contradict or supplement any information contained in the presentence investigation report.
Therefore, "[t]he trial judge here, sitting without a jury, had broad discretion in the things he was able to consider. He may appropriately conduct an inquiry broad in scope, largely unlimited as to the kind of information he may consider, or the source from which it may come." Evans v. State, 547 So.2d 38, 41 (Miss.1989) (citing United States v. Barnett, 587 F.2d 252 (5th Cir. 1979)). "The imposition of a sentence is within the discretion of the trial court, and this Court will not review the sentence, if it is within the limits prescribed by statute." Reynolds v. State, 585 So.2d 753, 756 (Miss.1991) (citing Reed v. State, 536 So.2d 1336, 1339 (Miss.1988), Boyington v. State, 389 So.2d 485 (Miss.1980)). "In imposing sentence, the trial court may take *247 into account larger societal concerns, as long as the sentence is particularized to the defendant." Reynolds, 585 So.2d at 756 (citation omitted). We find the trial judge did not abuse his discretion here.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF CLARKE COUNTY OF CONVICTION OF SALE OF COCAINE AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $5,000, WITH $4,000 SUSPENDED, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.
IRVING AND LEE, JJ., NOT PARTICIPATING.