# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Chief Judge Decker, Judges O'Brien and Causey
Argued at Lexington, Virginia


DIANNA CAROL SPENCER

                                         MEMORANDUM OPINION[*] BY
v.       Record No. 0668-23-3       CHIEF JUDGE MARLA GRAFF DECKER
                                             SEPTEMBER 10, 2024

COMMONWEALTH OF VIRGINIA


### FROM THE CIRCUIT COURT OF PATRICK COUNTY
James R. McGarry, Judge

Michelle C.F. Derrico, Senior Appellate Attorney (Virginia Indigent
Defense Commission, on briefs), for appellant.

Anna M. Hughes, Assistant Attorney General (Jason S. Miyares,
Attorney General; John Beamer, Assistant Attorney General, on
brief), for appellee.


Dianna Carol Spencer appeals her bench-trial convictions for possession of burglarious

tools, conspiracy to commit armed burglary, and petit larceny in violation of Code

§§ 18.2-22, -91, -94, and -96. She contends that the evidence was insufficient to support her

convictions for possession of burglarious tools and conspiracy to commit armed burglary. Spencer

also argues that the trial court abused its discretion in sentencing her to ten days of incarceration and

a three-year period of probation for petit larceny. We hold that the evidence supports the

challenged convictions and the trial court did not abuse its discretion when sentencing her.

Accordingly, we affirm the trial court's judgment.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

Michael Harbour owned a residence and outbuildings on a parcel of land at the end of more than two miles of unpaved road in a remote, wooded area of Patrick County. He mounted multiple security cameras on his property, including one on a tree facing the outside of the front gate at the end of the public road. A private-property sign was posted on the gate. Harbour could use his cell phone to review video and audio footage from the cameras and track the location of each one.

On October 4, 2021, Harbour reviewed footage from the camera facing the front gate. Footage recorded around noon that day showed Spencer and her brother Larry Philpott standing outside a car parked in front of the locked gate. About five minutes later, the camera recorded footage inside a vehicle. Later footage from around 5:00 p.m. that day showed Spencer mounting the camera at a different property. Harbour remotely tracked the camera to a location in Bassett, Virginia.

Harbour called Patrick County Sheriff Dan Smith and "asked him if he could send somebody to the property." Harbour also sent Smith photographs of Spencer and Philpott taken from the video footage. Sheriff Smith went to Harbour's property just before 10:00 a.m. the day after the theft. He climbed over the locked gate and confirmed that no one had entered the residence or outbuildings. As Smith was driving away from the property, he passed a pickup truck pulled partially off the road roughly 500 feet from Harbour's gate. Spencer was in the driver's seat, and Philpott was in the passenger's seat.

---

[1] On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). Doing so "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Id.* (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018) (per curiam)).

When Smith stopped his vehicle beside the truck, Philpott asked "if there was any land for sale." Smith directed Philpott to get out of the truck, patted him down for weapons, and handcuffed him. He seized two knives from Philpott. Both Spencer and Philpott denied having been at that location previously. Smith then showed them photographs of themselves from Harbour's security camera and asked "if they had the camera with them." Spencer said that the camera was at her residence. Although she claimed "they had come back" to return the camera, she also admitted they did not have it with them. When Smith asked how they intended to return the camera if they did not have it there, Spencer "started to talk about a man in blue that [she claimed] she had s[een at the property] the previous day."

Inside the truck, Sheriff Smith saw a pair of work gloves and a pry bar under the center console, between where the two had been sitting. Smith also found a pair of bolt cutters behind the seat. When Smith asked "if there were any weapons in the truck," Philpott "volunteer[ed] that he had a pistol in the backpack," which was visible between the seats. In the backpack, Smith found a loaded Glock handgun, five full magazines, a new pair of tinsnips, garbage bags, a flashlight, binoculars, and "wire hand cutters."

Investigator Brian Hubbard of the Patrick County Sheriff's Office arrived at the scene and also spoke with Spencer. She admitted that she "took [Harbour's] camera to put it up at her place." She claimed that the "pry bar and bolt cutters were for car maintenance." Hubbard later retrieved Harbour's camera from Spencer's residence.

Spencer was charged with possession of burglarious tools, conspiracy to commit burglary while armed with a deadly weapon, and petit larceny.[2] She and Philpott were tried jointly without a jury.

---

[2] Philpott was charged with the same three offenses. Additionally, he was charged with and pleaded guilty to unlawfully carrying a concealed weapon.

At trial, the Commonwealth played several clips recorded by Harbour's camera on October 4, 2021. One clip was recorded around 7:00 p.m. that day, after Spencer mounted the camera at her own residence. In the clip, Philpott—the only person visible—made a statement that was difficult to discern in its entirety due to the audio quality. The trial court "thought" Philpott "said something like" the phrases "[w]e got to get in that house" and "[w]hat we have to use to burn that mf up." But it noted that these "may not have been [the] exact words."[3]

The Commonwealth also played body camera footage showing Investigator Hubbard speaking with Spencer while she sat in the back of a patrol car on October 5, 2021. In the video, Spencer claimed that she and Philpott had simply been out for a drive the previous day and she took the camera to stop people from "staring at" her property. Spencer reiterated that she had "seen somebody in blue" at Harbour's property the day of the theft. According to Spencer, she went back the next day with Philpott because she wanted to return the camera and needed to see if the man in blue was still there. Spencer maintained that she did not bring the camera with her because she was afraid the man might try to hurt her. She further suggested that she had the pry bar and bolt cutters in the truck "just probably to work on the truck in case it b[roke] down."

At the close of the Commonwealth's case, Spencer made motions to strike the evidence of possession of burglarious tools and of conspiracy to commit burglary while armed with a deadly weapon. The trial court denied the motions. It ruled that the offense of possession of burglary tools was "very clear" because Spencer was "driving the vehicle" and the "tools were easily within her possession." With regard to the conspiracy charge, referencing the video clip from Harbour's camera, the court noted that who Philpott was "speaking to" in the clip was "unknown" and that he could have been talking to himself or to Spencer. But the court observed

---

[3] Harbour testified that Philpott said, "We got to get into that house and that's the m'fer that we're going to use to do it." The trial court noted that it "couldn't say whether" the recording did or did not contain "everything" that Harbour testified "[he] heard."

that Spencer and Philpott drove together the next day "to very near" Harbour's residence with burglary tools in the truck. As a result, it found that the evidence was sufficient to establish "a joint venture at that point in time . . . even without the conversation."

Spencer and Philpott both testified in their own defense. Spencer said she was "sorry" because she "thought the camera was broke[n]," there was no place "to put the camera," and she "just didn't want to lay it on the ground with [her] fingerprints on it and [have] it get run over or whatever." She further explained that she had "all kinds of tools" in the truck because she "work[ed] on vehicles." According to Spencer, she and Philpott were near Harbour's property the day before because her sister lived nearby and they were "looking for some land for sale." Finally, Spencer said she was not "planning on going inside any . . . houses that day."

Philpott also denied any intent to "break[] into any homes" where they were stopped. He said they were near Harbour's property because he was looking for land to purchase for his brother and the "GPS . . . mixed [him] up." Philpott, unlike Spencer, claimed that the tools in the truck were needed to open the broken driver's side door.

Defense counsel asked about Philpott's reference in the video clip to "that house" "we got to get in[to]" and encouraged him to explain his statement. Philpott suggested that he was referring to "a house . . . at [his] Mama's" in which he had been living "off and on" since her death twenty years earlier. He stated he could not find the key and planned to use the bolt cutters to enter the home to get his possessions.

At the close of all the evidence, Spencer renewed her motions to strike. The court denied the motions and convicted Spencer and Philpott on all counts.

The discretionary sentencing guidelines prepared for Spencer provided a recommended sentence between one day and six months of incarceration. At the sentencing hearing, Spencer stressed that she had "a fairly minimal prior record," with no felony convictions, and that her

"significant misdemeanor convictions" were decades old. She also noted that Harbour's camera had been returned. Further, Spencer asserted that she "had no connection . . . at all" to the firearm. Finally, she noted that Philpott had "received [a jail sentence of] three days on the petit larceny," and she "ask[ed] for the same disposition."

The trial court imposed three-year suspended sentences on both felony counts. It sentenced Spencer to twelve months of incarceration with all but ten days suspended for the misdemeanor petit larceny. It also imposed three years of supervised probation.

ANALYSIS

Spencer argues that the trial court erred by denying her challenges to the sufficiency of the evidence. She also contends that the sentence imposed for the larceny was an abuse of the court's discretion.

I. Sufficiency of the Evidence

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, for an appellate court, '[t]he only "relevant question is . . . whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."'" *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024) (alterations in original) (quoting *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (emphasis added)). If there is evidentiary support for the conviction, "the reviewing court is not permitted to substitute its own judgment . . . , even if its opinion might differ from the conclusions reached by the trier of fact" at trial. *Id.*

(quoting *Jordan v. Commonwealth*, 286 Va. 153, 156-57 (2013)).  These principles apply in the same way in a bench trial, such as this one, as they do in a jury trial.  *Dietz v. Commonwealth*, 294 Va. 123, 132 (2017).

### A.  Possession of Burglarious Tools

Spencer contends the evidence was insufficient to support her conviction for possession of burglarious tools.  A person who possesses "any tools, implements or outfit, with intent to commit burglary, robbery or larceny" is "guilty of a Class 5 felony."  Code § 18.2-94.  "The possession of such burglarious tools . . . shall be prima facie evidence of an intent to commit burglary, robbery[,] or larceny."  *Id.*  Possession can be established with "circumstantial proof 'that the defendant was aware of the presence and character of the [items] and that [they were] subject to his dominion and control.'"  *McArthur v. Commonwealth*, 72 Va. App. 352, 368 (2020) (quoting *Smallwood v. Commonwealth*, 278 Va. 625, 630 (2009)); *see Carosi v. Commonwealth*, 280 Va. 545, 554 (2010) (recognizing that joint possession of contraband can support a conviction).  Finally, "[w]hether evidence is sufficient to prove constructive possession 'is largely a factual' question . . . ."  *McArthur*, 72 Va. App. at 368 (quoting *Smallwood*, 278 Va. at 630).

Spencer asserts that the Commonwealth failed to prove either that she possessed any relevant items or that the items were burglarious tools.  We disagree.

Regarding possession, Spencer, who was driving the truck, admitted to Investigator Hubbard that she possessed the bolt cutters and the pry bar found inside it by responding to his question about why she had the items.  She readily acknowledged having them, although she and Philpott provided different explanations for their use.  As a result, the fact that she may not have been aware of the tools in the backpack, including the tinsnips and wire cutters, is irrelevant.

Regarding the nature of the tools, Spencer points out that the Commonwealth presented no testimony that any of the tools in the truck were commonly used as burglarious tools.  *See*

*Burnette v. Commonwealth*, 194 Va. 785, 792 (1953). We hold, however, that a rational factfinder employing common sense could conclude that bolt cutters are commonly used to cut through padlocks to remove them without using a key or combination. *See Hagy v. Commonwealth*, 35 Va. App. 152, 160-61 (2001) (recognizing that possession of tools exclusively for "prying," which "could be used to forcibly open vending machines," permitted the inference that they were burglarious). Such a finding is supported by Philpott's testimony that he planned to use the bolt cutters to enter a different residence for which he did not have a key. Similarly, a factfinder could reasonably infer that a pry bar could be used to commit larceny or burglary without the aid of express testimony to that effect. *See id.*; *Calloway v. Commonwealth*, 62 Va. App. 253, 261 (2013) ("It is the fact finder's job to apply common sense to the evidence . . . .").

Additionally, the evidence, viewed under the proper standard, is sufficient to establish that on October 5, 2021, the day Spencer was apprehended, she possessed the burglarious tools with the intent to commit burglary, robbery, or larceny. "Absent a direct admission by the defendant," her intent "must necessarily be proved by circumstantial evidence." *Cole v. Commonwealth*, 294 Va. 342, 361 (2017) (quoting *Williams v. Commonwealth*, 278 Va. 190, 194 (2009)). "Because intent is a 'state of mind,' it 'may be proved by a person's conduct or by h[er] statements.'" *Fletcher v. Commonwealth*, 72 Va. App. 493, 506 (2020) (quoting *Barrett v. Commonwealth*, 210 Va. 153, 156 (1969)). "[W]hether the required intent exists is generally a question of fact for the trier of fact." *Smith v. Commonwealth*, 72 Va. App. 523, 536 (2020) (quoting *Brown v. Commonwealth*, 68 Va. App. 746, 787 (2018)). "[T]he 'fact finder may infer that a person intends the immediate, direct, and necessary consequences of h[er] voluntary acts.'" *Brown*, 68 Va. App. at 788 (quoting *Robertson v. Commonwealth*, 31 Va. App. 814, 820 (2000)). And that general inference is aided here by the more specific one in Code § 18.2-94 providing,

subject to an exception not applicable here, that "possession of . . . burglarious tools" or "implements . . . shall be prima facie evidence of an intent to commit burglary, robbery[,] or larceny."

Spencer admitted to Investigator Hubbard and at trial that she took the surveillance camera that monitored Harbour's front gate. The morning after the theft, Sheriff Smith discovered Spencer and Philpott stopped in a truck on the unpaved, dead-end road about 500 feet from Harbour's property. Spencer and Philpott initially lied regarding whether they had been to that location before. Spencer then gave Hubbard conflicting explanations for their presence in the remote area. She first claimed that she was there to return the camera, despite not having it with her and having already mounted it at her own property.[4] She later suggested that she did not bring the camera because she was afraid the "man in blue" was still present and might "hurt" her. Nonetheless, she returned to Harbour's property with Philpott. Investigator Hubbard examined the camera footage and found no evidence of the presence of a "man in blue" on the property. A rational factfinder could infer that Spencer provided these inconsistent explanations to conceal an illicit purpose for returning with burglary tools in a pickup truck. *See Lambert v. Commonwealth*, 298 Va. 510, 515 (2020).

Moreover, Spencer told Hubbard and testified at trial that she kept the bolt cutters and pry bar in the truck to perform vehicle maintenance. The trial court, as factfinder, was entitled to reject those assertions and conclude that Spencer lied to conceal the fact that she possessed those instruments with burglarious intent. *See Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019).

Viewed together in the light most favorable to the Commonwealth, Spencer's statements and acts—including her larceny from Harbour's property on October 4, her return to the same

---

[4] Spencer also testified at trial that she "thought the camera was broke[n]" and "just didn't want to lay it on the ground with [her] fingerprints on it and . . . get [it] run over or whatever." But she did not explain why she handled the camera in the first place.

remote area the next morning in a pickup truck, and the improbable nature of her explanations for her presence with bolt cutters and a pry bar—support the trial court's finding that she possessed burglarious tools with the intent to commit larceny or burglary. *See Commonwealth v. Moseley*, 293 Va. 455, 466 (2017) (requiring an appellate court to view evidence "collectively" rather than "in isolation"). We therefore affirm that conviction.

### B. Conspiracy to Commit Statutory Burglary

Spencer challenges the sufficiency of the evidence to support her conviction for conspiracy to commit statutory burglary. She contests both the proof of an agreement to "break or break and enter" and the proof of an agreement to "possess a firearm" while doing so, as charged in the indictment.

We begin with the language of the statutes. A person who "in the nighttime enters without breaking or in the daytime breaks and enters or enters and conceals himself in a dwelling house" with the intent to commit larceny is "guilty of statutory burglary." Code § 18.2-91 (incorporating language from Code § 18.2-90).[5] Statutory burglary in violation of this code section is a felony. *See* Code §§ 18.2-8, -91. A person who "conspire[s], confederate[s,] or combine[s] with another . . . to commit a felony" is also "guilty of a[n independent] felony." Code § 18.2-22. Under this statutory scheme, one who conspires to commit statutory burglary in violation of Code § 18.2-91 commits the felony of conspiracy in violation of Code § 18.2-22. Conspiracy was the charged offense here.

"To prove a conspiracy, the Commonwealth must offer evidence of 'an agreement between two or more persons by some concerted action to commit an offense.'" *James v. Commonwealth*, 53 Va. App. 671, 677-78 (2009) (quoting *Wright v. Commonwealth*, 224 Va.

---

[5] The offense of statutory burglary can be committed with or without the use of a deadly weapon. *See* Code §§ 18.2-10, -91 (providing heightened punishment for committing the offense while "armed with a deadly weapon").

- 10 -

502, 506 (1982)). To convict the defendant of conspiracy, unlike aiding or abetting, "the Commonwealth must prove 'the additional element of preconcert and connivance not necessarily inherent in the mere joint activity common to aiding and abetting.'" *Williams v. Commonwealth*, 53 Va. App. 50, 59-60 (2008) (quoting *Zuniga v. Commonwealth*, 7 Va. App. 523, 527 (1988)). "[T]he crime of conspiracy is complete when the parties agree to commit an offense . . . ." *Chambliss v. Commonwealth*, 62 Va. App. 459, 466 (2013). The law in "Virginia does not require proof of an overt act in furtherance of the conspiracy" as long as the evidence proves the necessary agreement. *See id.* at 466-67.

In light of these basic principles, we consider the appellant's arguments.

### 1. Agreement to Break or Break and Enter

Spencer contends the evidence was insufficient to prove that she and Philpott had an agreement to break or break and enter.

A "conspiratorial agreement" often may be proved only "by circumstantial and indirect evidence including the . . . actions of the parties." *Carr v. Commonwealth*, 69 Va. App. 106, 119 (2018) (quoting *Johnson v. Commonwealth*, 58 Va. App. 625, 636 (2011)). In fact, "[i]t is a rare case where any 'formal agreement among alleged conspirators' can be established." *James*, 53 Va. App. at 678 (quoting *Wilder Enters. v. Allied Artists Pictures Corp.*, 632 F.2d 1135, 1141 (4th Cir. 1980)).

Here, some of the same evidence that established Spencer possessed the burglarious tools with intent to commit larceny also supports the trial court's finding that she conspired with Philpott to break and enter to commit that offense. Both Spencer and Philpott were at Harbour's property in a four-door hatchback vehicle on the day Spencer stole the trail camera that monitored the locked front gate. Although the trial court found it could not determine whether Philpott was talking to Spencer when the trail camera recorded him later that day saying, "We

- 11 -

got to get in that house," this statement certainly provided evidence of *Philpott's* intent, and the camera was mounted at Spencer's property when he made the statement. *See Barney*, 302 Va. at 97 (recognizing the appellate court's duty to defer to "the factfinder's 'interpretation of all of the evidence, including video evidence[,]' presented at trial" (citing *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022))). In light of Philpott's stated intent, Spencer's return with him the next morning to Harbour's very remote property, in a pickup truck with implements for prying and cutting locks, provided evidence of their shared intent. Coupled with these facts was the evidence that they had removed the security camera at Harbour's property a day earlier, lied about having been there, gave incredible explanations for their second visit, and made inconsistent statements about why they possessed the prying and cutting tools at that time.

The evidence as a whole permitted the trier of fact to find that at least by the time the two returned to Harbour's property on the morning of their arrests, they were engaged in "a joint venture" to break and enter for the purpose of committing larceny.

### 2. Agreement to Commit the Offense While Armed

As Spencer notes, the indictment alleged that she "conspire[d] with another to break and enter" Harbour's dwelling "while armed with a deadly weapon." She argues the evidence was insufficient to prove that being armed in that fashion was part of her agreement with Philpott.

We need not consider whether the evidence proved this aspect of the underlying burglary offense because we hold, on the facts of this case, that the conspiracy conviction is valid regardless of whether the evidence proved the parties agreed to be armed with a deadly weapon. *See, e.g.*, *Goodwin v. Commonwealth*, 71 Va. App. 125, 149 n.14 (2019) (recognizing the duty of an appellate court to "decide[] cases on 'the best and narrowest ground[] available'" (quoting *Dietz*, 294 Va. at 134)). Significant to the resolution of this issue is the principle that "[a]n appellate court cannot vacate a criminal conviction that violates no recognizable legal principle simply on the ground that

- 12 -

. . . the proper legal basis for it" has not been "articulate[d]" by the prosecutor or the trial judge. *Blackman v. Commonwealth*, 45 Va. App. 633, 642 (2005), *quoted with approval in Logan v. Commonwealth*, 47 Va. App. 168, 172 n.4 (2005) (en banc). Instead, the appellate court may affirm on any legal basis supporting the judgment "so long as it does not require new factual determinations, . . . involve an affirmative defense that must be 'asserted in the pleadings,' or serve as a subterfuge for a constitutionally prohibited cross-appeal in a criminal case." *Id.* (citations omitted) (quoting *Eason v. Eason*, 204 Va. 347, 352 (1963)). Here, that alternate legal ground is that the reference in the conspiracy indictment to committing the offense "while armed with a deadly weapon" is surplusage and, consequently, the Commonwealth was not required to prove it to support Spencer's conviction.[6] *See Alston v. Commonwealth*, 32 Va. App. 661, 663-66 (2000) (affirming a challenge to the sufficiency of the evidence to prove an allegation in an indictment upon concluding that the specific allegation was surplusage).

"The purpose of an indictment is to provide the accused with notice of the cause and nature of the accusations against h[er]." *Commonwealth v. Bass*, 292 Va. 19, 28 (2016). Such "[n]otice to the accused . . . is the rockbed requirement [that] insures the accused a fair and impartial trial on the merits." *Hairston v. Commonwealth*, 2 Va. App. 211, 214 (1986).[7] Even so, Virginia law provides just as clearly that no indictment will be "deemed invalid" for the "insertion of any other words of mere form or surplusage." Code § 19.2-226(9). The Commonwealth is not required to prove beyond a reasonable doubt language in the indictment that is "immaterial to the real issues in the case." *Purvy v. Commonwealth*, 59 Va. App. 260, 268-69 (2011) (quoting *Simmers v. DePoy*, 212 Va. 447, 450 (1971)). A "variance" in the wording of an

---

[6] In light of this holding, we do not address whether the evidence proved Spencer and Philpott agreed to commit the offense "while armed" with either a gun or a knife.

[7] Spencer does not suggest that she lacked adequate notice of the crime charged.

- 13 -

indictment is "fatal," therefore, only "where the indictment charges a wholly different offense than the one proved." *Id.* at 266-67.

A fatal variance exists, for example, where an indictment "charg[es] theft of money by false pretenses from one victim" but "prov[es] only theft by false pretenses from another victim" or "charg[es] a defendant with shooting into one person's residence" but "prov[es] instead that he shot into the residence of someone else." *Id.* at 267 (first citing *Gardner v. Commonwealth*, 262 Va. 18 (2001); and then citing *Etheridge v. Commonwealth*, 210 Va. 328 (1969)). But a variance involving a lack of proof of ownership set out in an indictment is not always fatal. It is not fatal, for example, where an arson statute requires proof that the premises burned was a "dwelling house" but provides that the offense is a crime "whether [the dwelling house] belong[ed] to [the arsonist] or another." *Alston*, 32 Va. App. at 665-67 (emphasis omitted) (quoting Code § 18.2-77(A)). In this context, to whom the dwelling belonged is mere surplusage, and proving it is unnecessary. *Id.* at 666.

Decisions in burglary cases provide further instruction regarding fatal variances on one hand and mere surplusage on the other. A burglary case in which entry in the nighttime is alleged but, instead, a daytime entry is proved provides an example of a fatal variance. *See Scott v. Commonwealth*, 49 Va. App. 68, 70-71, 77 (2006). Because daytime entry also requires proof of a breaking but nighttime entry does not, in such circumstances, the indictment has failed to charge the critical element of breaking, and that variance is fatal. *See id.* The converse circumstance, however, involves harmless surplusage. *See Griffin v. Commonwealth*, 13 Va. App. 409, 411-12 (1991). If an indictment charges a breaking and entering during the daytime on a specific date but the evidence proves an entry at night, for which no proof of breaking was required, the "variance as to [whether it was dark or light] could not have caused [the defendant] harm in terms of a fair and impartial trial on the merits." *Id.* at 412 (first alteration in original) (quoting *Hairston*, 2 Va. App. at 216). In the event of a nighttime entry, the element of breaking is surplusage, and the prosecution is

not required to prove that the charged breaking occurred in order to establish a burglary. *See id.* at 411-12.

Similarly in this case, in which conspiracy is the charged offense, whether the defendants agreed that one of them would be armed with a deadly weapon when they burglarized Harbour's property was surplusage.[8] Just as statutory burglary can be established with or without proof of a breaking, depending on when the entry occurred, *conspiracy* to commit that offense can be proved with or without evidence that the parties agreed to be armed with a deadly weapon. *See* Code §§ 18.2-22, -91. The offense is conspiracy to commit statutory burglary under either circumstance. And the punishment is the same under either circumstance—punishment for a Class 5 felony. *See* Code §§ 18.2-22, -91.[9] "While 'certainty to a reasonable extent is an essential requirement of criminal pleading,' this principle should not lead to 'the acquittal of guilty persons on account of [a

---

[8] The Commonwealth attempts to concede that it was required to prove that the parties agreed to be armed with a deadly weapon. "Our fidelity to the uniform application of law," however, "precludes us from accepting concessions of law made on appeal." *Logan*, 47 Va. App. at 172, *quoted with approval in Daily Press, Inc. v. Commonwealth*, 285 Va. 447, 454 n.6 (2013); *see id.* at 172 n.4 (distinguishing the principle that a court may accept "an appellant's concession of law that qualifies either as a waiver . . . or as an express withdrawal of an appellate challenge"), *quoted with approval in Commonwealth v. Holman*, 303 Va. 62, 75 (2024). The Court must, therefore, conduct an independent examination of this legal issue. *See Logan*, 47 Va. App. at 172 n.4 (recognizing that an *appellee* may not waive a legal ground for *affirming* a criminal conviction on appeal).

[9] The range of punishment for statutory burglary in violation of Code § 18.2-91, an unspecified category of felony offense, is one to twenty years. Code §§ 18.2-8, -91; *see Turner v. Commonwealth*, 38 Va. App. 851, 856-57 (2002). If the defendant, additionally, "was armed with a deadly weapon at the time of [the] entry," the burglary offense is a Class 2 felony with a punishment range of twenty years to life. Code §§ 18.2-10(b), -91. The inchoate crime of *conspiracy* to commit a substantive felony offense, however, is punished differently than the underlying completed felony. Subject to exceptions not applicable here, a conspiracy to commit *any felony* other than a Class 1 felony is punishable as a Class 5 felony. *See, e.g.*, Code § 18.2-22(b) (providing that the punishment for conspiracy to commit an offense "shall [not] . . . exceed the maximum punishment for . . . the offense itself"). Consequently, conspiracy to commit statutory burglary in violation of Code § 18.2-91—which is *not* a Class 1 felony—is punishable as a Class 5 felony with a sentencing range of one to ten years. *See* Code § 18.2-10(e). And this same classification applies regardless of whether the parties agreed to be armed with a deadly weapon while perpetrating the planned offense.

mere] technical distinction between the offense charged and the offense proved . . . .'" *Purvy*, 59 Va. App. at 266 (quoting *Lewis v. Commonwealth*, 120 Va. 875, 880 (1917)).

We therefore hold that the "while armed with a deadly weapon" reference in the conspiracy indictment is surplusage and the Commonwealth was not required to prove it to support Spencer's conviction for conspiracy to commit statutory burglary.

## II. Sentence

"We review the trial court's sentence for abuse of discretion." *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011). "This bell-shaped curve of reasonability governing our appellate review rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." *Cellucci v. Commonwealth*, 77 Va. App. 36, 46 (2023) (en banc) (quoting *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016)). "[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du*, 292 Va. at 564 (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)). In the context of a challenge to the length of a sentence, this Court may consider only whether the sentence fell outside the permissible statutory range. *See Rawls v. Commonwealth*, 272 Va. 334, 351 (2006).

Spencer argues that the trial court erred by sentencing her to "a period of active incarceration and a three-year period of probation for the petit larceny offense." The sentence that the trial court imposed for petit larceny was within the statutory range set by the General Assembly. *See* Code §§ 18.2-11(a), -96(2). Accordingly, the court did not abuse its discretion in imposing this sentence.

Spencer also asserts that the court improperly weighed her previous misdemeanor convictions. The court noted that the criminal history attachment to the presentence report "indicate[d] a couple of things in . . . Spencer's past . . . quite a while ago and no record at all since

1996." In her sentencing argument, Spencer emphasized her lack of felony convictions and the age of her misdemeanors. The Commonwealth did not argue for a specific sentence, and the court did not refer again to the misdemeanor convictions. Consequently, the record does not reflect that the court improperly weighed those convictions.

Finally, Spencer asserts that the court should have sentenced her to the same three days that Philpott purportedly received for his conviction for petit larceny. Although the trial court was permitted to weigh Philpott's purported sentence in fashioning Spencer's, it was not required to do so or to impose identical sentences, particularly given that Spencer was the person who admitted taking and retaining the stolen trail camera. *Cf. Eberhardt v. Commonwealth*, 74 Va. App. 23, 36-37 (2021) (holding no abuse of discretion where the court convicted the defendant of child cruelty and his co-defendant "of only assault and battery" because the evidence supported its reasoning that the co-defendant's conduct was "less culpable"). Moreover, the evidence and arguments that informed Philpott's sentence are not before this Court. "[B]arring clear evidence to the contrary, [an appellate court] will not presume that a trial court purposefully ignored mitigating factors in blind pursuit of a harsh sentence." *Guest v. Commonwealth*, 78 Va. App. 187, 197 (2023) (second alteration in original) (quoting *Bassett v. Commonwealth*, 13 Va. App. 580, 584 (1992)). The fact that Spencer may have received a different sentence than Philpott does not render her ten-day active jail sentence an abuse of discretion. The record shows that the court properly considered the evidence and arguments and exercised its sentencing discretion.[10]

---

[10] Although Spencer's assignment of error asserts that the trial court erred by imposing three years of probation for her petit larceny conviction, she does not offer any argument supporting that contention. Accordingly, we do not consider that issue. *See* Rule 5A:20(e).

CONCLUSION

We hold that the evidence was sufficient to support Spencer's convictions for possession of burglarious tools and conspiracy to commit statutory burglary. We further conclude that the trial court did not abuse its discretion by the way it sentenced her for petit larceny. Therefore, the trial court's judgment is affirmed, and we remand the case for the correction of a clerical error in the sentencing order.[11]

*Affirmed and remanded.*

---

[11] The indictment and trial transcript reflect that the appellant was charged with and found guilty of *conspiracy* to commit the substantive offense of burglary. The sentencing order, however, cites only the applicable burglary statute, Code § 18.2-91. We remand to the trial court to correct the omission from the sentencing order of the specific statute proscribing the crime of conspiracy at issue in this case, Code § 18.2-22. *See* Code § 8.01-428(B); *Bagley v. Commonwealth*, 73 Va. App. 1, 30 n.10 (2021).